THE PEOPLE OF THE STATE OF NEW YORK, Respondent,
*v.* JOSEPH RYAN, Appellant.

Submitted March 24, 1937; decided April 27, 1937.

*Jerome A. Peck* and *Irving E. Toohill* for appellant. The facts stated in the indictment do not constitute a crime.   (Cons. Laws, ch. 3-B, §§ 2, 116.)

*Walter A. Ferris, District Attorney* (*William F. Horan* and *Thomas D. Scoble, Jr.*, of counsel), for respondent. The statute (Cons. Laws, ch. 3-B, § 102, subd. 1 [d]) in express terms positively prohibits any person from transporting wines and liquors from without the State into this State even though such liquors may be for his own personal use.   The County Court erred in misapplying the rule of *ejusdem generis* for the purpose of spelling out a legislative intention directly contrary to the plain words of the Legislature itself.   (*Manning* v. *Keenan*, 73 N. Y. 45; *People ex rel. Bingham* v. *State Water Supply Comm.*, 153 App. Div. 587; *People* v. *Crossman*, 241 N. Y. 138; *Ossmann* v. *Crowley*, 101 App. Div. 597; *Gallagher* v. *Dolan*, 27 Misc. Rep. 122; *Gooch* v. *United States*, 80 L. Ed. 418; *People* v. *Kaye*, 212 N. Y. 407.)

*John J. Bennett, Jr., Attorney-General* (*John C. Crary, Henry Epstein, John F. X. Mc Gohey* and *Colin McLennan* of counsel) for State of New York.

*Benjamin I. Tunick* for Westchester Package Stores, Inc., *amicus curiæ.*

RIPPEY, J.   Defendant was indicted for carrying liquor and wine into the State of New York in violation of section 102, subdivision 1 (d), of the Alcoholic Beverage Control Law (Cons. Laws, ch. 3-B) which reads as follows: " No common carrier or other person shall bring or carry into the state any liquors and/or wines, unless the same shall be consigned to a person duly licensed hereunder to traffic in liquors and/or wines, as the case may be."

Motion was made by defendant for an inspection of the minutes of the grand jury. The record before this court contains those minutes and the affidavits and moving papers upon which the County Court of Westchester county dismissed the indictment. Defendant waived immunity and testified before the grand jury. It appears from the record that defendant needed a particular manufacture of wine for medicinal purposes which he did not find available within the State of New York. He had found the desired wine at one of the A. & P. stores in Danbury, Connecticut. Another such store was located upon the Post road in the town of Greenwich, in the State of Connecticut, a short distance from the New York State line. On December 14, 1935, defendant procured in this store eleven bottles of wine and one bottle of hard liquor, placed it in his car and then proceeded across the State line into the State of New York. Employees of the Westchester Retail Liquor Dealers Association had spied on and trailed Ryan to and from Greenwich. After he had crossed the State line and proceeded some distance into the State of New York, they forced him over to the side of the road, held him up and produced a Port Chester police officer who arrested him for violation of the statute above quoted. It appears affirmatively that the liquor was not intended for sale or distribution. It was owned by Ryan and was solely for his personal use. Its possession was not subject to tax within the State of New York. The Appellate Division unanimously reversed the order of the County Court dismissing the indictment and reinstated it. The appeal reaches us by permission of a justice of the Appellate Division.

Defendant asserts that the facts stated in the indictment do not constitute a crime within the meaning of section 102, subdivision 1 (d), of the Alcoholic Beverage Control Law, that if the Legislature made it a crime to transport liquor across State lines, to that extent the act is unconstitutional in that it violates the commerce

clause of the Federal Constitution, being an attempt to regulate commerce among the several States, and that the court does not have jurisdiction to try the indictment.

In the interpretation of statutes, the spirit and purpose of the act and the objects to be accomplished must be considered. The legislative intent is the great and controlling principle. Literal meanings of words are not to be adhered to or suffered to " defeat the general purpose and manifest policy intended to be promoted;" all parts of the act must be read and construed together for the purpose of determining the legislative intent, and if the statute is ambiguous and two constructions can be given, the one must be adopted which will not cause objectionable results or cause inconvenience, hardship, injustice or mischief or lead to absurdity. (*Smith* v. *People*, 47 N. Y. 330; *People ex rel. Wood* v. *Lacombe*, 99 N. Y. 43, 49; *Matter of Livingston*, 121 N. Y. 94; *Surace* v. *Danna*, 248 N. Y. 18, 21; *City Bank Farmers' Trust Co.* v. *N. Y. C. R. R. Co.*, 253 N. Y. 49, 55; *Matter of Meyer*, 209 N. Y. 386.)

The express policy of the State and the purpose of the chapter, as stated in section 2 of the Alcoholic Beverage Control Law (Laws of 1934, ch. 478, in effect July 1, 1934), is " to regulate and control the manufacture, sale and distribution within the state of alcoholic beverages for the purpose of fostering and promoting temperance in their consumption and respect for and obedience to law." It is there declared that " such policy will best be carried out by empowering the liquor authority of the state to determine whether public convenience and advantage will be promoted by the issuance of licenses to traffic in alcoholic beverages, the increase or decrease in the number thereof and the location of the premises licensed thereby." It is added that " it shall be against the public policy of the state to permit the selling or serving of alcoholic beverages for consumption in such premises as were commonly known and referred to as saloons," etc. The definite, fixed and expressed purpose of the Legislature

was to regulate and control the *manufacture, sale* and *distribution* of alcoholic beverages. No purpose or intent is found to control their personal use, except that sale for consumption on premises not under license was prohibited. Control of the manufacture, sale and distribution was desirable also for tax purposes. The Tax Law (Cons. Laws, ch. 60) requires distributors to keep account of purchases, sales and distribution of liquors for tax purposes. But the law provides that " nothing in this section contained shall be construed to require the keeping of a record of the purchase or disposition of alcoholic beverages by a consumer thereof, except by a person who uses the same for commercial purposes, or of the sale of alcoholic beverages at retail." (Tax Law, § 426.) There is nothing in the law to indicate that the Legislature had in mind any intent to interfere with the private right of individuals to consume or transport within the State alcoholic beverages lawfully obtained. The State maintains no prohibition of consumption of alcoholic beverages by private individuals in their own homes. By the provision of the act (§ 116), an individual may transport within the State liquor owned by him as long as the purpose of transportation is not for distribution or sale. To hold with respondent here would require such an interpretation of the section of the act under which the indictment is brought as to deny to the defendant the right to transport which is expressly granted by section 116. The crime here, if crime there be, is the transportation of liquor owned by defendant and for his private use across the boundary line between Connecticut and New York State.

Having in mind the policy of the State and the purposes of the act, what construction is to be given to the statute under which the indictment is found? The words used in the applicable statute prohibit a " common carrier or other person " from bringing liquor into the State. Applying the doctrine of *ejusdem generis* to the expression " No common carrier or other person," which is contained

in subdivision 1 (d), quoted above, the words "No common carrier or other person" should be construed to mean "No common carrier or other person engaged in a similar occupation," that is, no other person engaged in commercial transportation of goods owned by or consigned to others. That rule of construction is in harmony with the obvious purposes of the Legislature. Giving consideration to the practical effects of a construction which would make it a crime for a person to bring intoxicating liquor into the State for his own personal use and to the fact that as a regulatory measure its usefulness may be doubtful and would not be within the declared policy of the State and would be contrary to the meaning of other provisions of the act, this particular section of the statute should be construed as being intended to apply only to commercial importation. Such being the construction given to subdivision 1 (d), the reference to personal use in the next subdivision of the act must mean that the "common carrier or other person" is prohibited from bringing or carrying into the State liquors and wines, whether they are to be used personally by the consignee or sold by him. It does not refer to personal use by one who is not a "common carrier or other person engaged in a similar occupation" who brings such liquor or wine into the State for his own private consumption.

Criminal statutes must be strictly construed. Under the facts in this case, defendant committed no act within the prohibition of the statute. That conclusion being reached, no constitutional question remains for our consideration.

The order of the Appellate Division should be reversed and that of the County Court affirmed.

CRANE, Ch. J., LEHMAN, O'BRIEN, HUBBS, LOUGHRAN and FINCH, JJ., concur.

Ordered accordingly.