THE PEOPLE OF THE STATE OF NEW YORK, on the Complaint of HAROLD F. MILLER, Respondent, *v.* RUTH ANDERSON, Appellant.

Court of Special Sessions of City of New York, Appellate Part, First Department, April 2, 1940.

*Darcy, Loughman & Bailey* [*Miles D. Kennedy* of counsel], for the appellant.

*William C. Chanler, Corporation Counsel* [*Edward J. McGratty, Jr.,* of counsel], for the respondent.

BAYES, Ch. J.  Appeal from judgment of the Magistrates' Court of the City of New York, First District, Manhattan, rendered December 8, 1939, convicting defendant, Ruth Anderson, of a violation of certain provisions of Local Law 23 of 1938, hereinafter referred to, and imposing a fine of twenty-five dollars or ten days in the city prison.

It appears that on November 29, 1939, an investigator of the department of finance of the city of New York made a complaint against defendant charging that on November 28, 1939, at Nineteenth street and Sixth avenue, in New York county, defendant " did violate Sections T 41–4.0 and T 41–10.0 of Local Law 23 as amended by Local Law 72 of 1938 and Local Law 100 of 1939 of the City of New York, in that she did have in her possession 160 packages of cigarettes not bearing the stamps required by such law to be affixed thereto, evidencing payment of the tax provided for in such

local law, which cigarettes were not in an unbroken container marked as having been received within 24 hours then preceding."

The testimony of the investigator, other representatives of the department of finance and of defendant's witnesses establishes that on the date charged in the complaint defendant purchased three cartons of Camel and thirteen cartons of Chesterfield cigarettes at a tobacco establishment in Jersey City, N. J. The cigarettes were done up in two packages. After this purchase defendant got into a Hudson and Manhattan railroad train at the Grove Street station in Jersey City and left the train at Nineteenth street and Sixth avenue, New York county, carrying the two packages. Defendant went into a restaurant at 638 Sixth avenue, at about one-fifteen P. M., carrying the cigarettes. She was under the observation of an investigator of the department of finance from the time of purchase of the cigarettes until four-ten P. M. Defendant was questioned by the investigator and a detective attached to the department of finance. She admitted she had no delivery tickets or invoices for the cigarettes in her possession. Tax stamps were not affixed to these cigarettes. Defendant stated that the three cartons of Camel cigarettes were for her own use and the thirteen cartons of Chesterfields were for the use of her brother with whom she lives. She gave her occupation as that of draper and testified that before leaving for Jersey City she asked her brother for household money and he gave her twenty dollars and asked her to get some cigarettes. Defendant further testified that the trip to New Jersey for the cigarettes was her own idea and not that of her brother. The representative of the department of finance produced no evidence that defendant was going to sell the cigarettes or make any disposition of them other than that testified to by defendant, viz., that she intended the cigarettes for her personal use and for that of her brother. Defendant also denied any intention of selling the cigarettes to her fellow employees at her place of employment. Defendant's brother testified he gave defendant twenty dollars and asked her to get some cigarettes because he was out of them. He also testified he was a contractor and not a dealer in cigarettes and did not intend to sell the cigarettes in question.

These facts raise the question as to whether a person who has purchased sixteen cartons of cigarettes in another State and brought them into the city of New York for personal or household use without any evidence of a sale or resale thereof or of an intent to sell or resell, or make other disposition for a consideration, is guilty of violating section T41-4.0 or section T41-10.0 of the Administrative Code of the City of New York, where the tax stamps prescribed by said law are not affixed to the cigarettes. We are of the opinion that

this question should be answered in the negative and that consequently the guilt of the defendant was not established beyond a reasonable doubt, and the complaint should have been dismissed.

Respondent conceded on the argument, and, as we think, rightly, that it is lawful to purchase cigarettes outside the city for one's own consumption and bring them into the city. So far as the record discloses that is precisely what defendant did as to three cartons of cigarettes, and since all of the cigarettes were purchased for private household consumption and there is no evidence of a sale by defendant of any of the cigarettes within the city of New York, we can draw no distinction between the cigarettes that were for the immediate personal use of defendant and those for household use. If in making the purchase defendant acted as agent for her brother as to all or a part of the cigarettes, still there was no sale or resale within the city of New York.

Appended hereto as a footnote* are the pertinent provisions of

---

\* " A LOCAL LAW

To amend the administrative code of the City of New York, in relation to raising revenue for the purpose of relieving the people of the city of New York from the hardships and suffering caused by unemployment and the effects thereof on the public health and welfare, by imposing a tax upon sales of cigarettes in the city of New York, to enable such city to defray the cost of granting unemployment work and home relief."

Section T41–1.0 contains certain definitions including

" 3. ' Sale.' Any transfer of title or possession or both, exchange or barter, conditional or otherwise, in any manner or by any means whatsoever *for a consideration* or any agreement therefor.

" 4. ' Dealer.' Any wholesale dealer and retail dealer as hereinafter defined.

" 5. ' Wholesale dealer.' Any person who sells cigarettes to retail dealers or other persons for purposes of resale only.

" 6. ' Retail dealer.' Any person other than a wholesale dealer engaged in the business of selling cigarettes."

Section T41–2.0 levies a tax upon " every sale of cigarettes at retail at the rate of one cent for every twenty cigarettes or fraction thereof."

Subdivision c of this section is as follows:

" c. Except as hereinafter provided, all dealers shall be liable to the City of New York as taxpayers for the payment of the tax imposed by this section and shall pay the tax to the treasurer by purchasing from the treasurer adhesive stamps of such designs and denominations as may be prescribed by the comptroller."

Section T41–4.0 provides in subdivisions c and d that:

" c. Each retail dealer in the City of New York shall immediately upon the receipt of any cigarettes at his place of business affix such stamps to each package, unless such stamps shall have been previously affixed thereto, \* \* \* or shall immediately mark in ink on each unopened box, carton or other container of such cigarettes the word ' received ' and the month, day and hour of such receipt, and shall affix his signature thereto, or in any other manner prescribed.

" d. He shall in any event open such box, carton or other container and immediately affix such stamps to each package therein, and cancel the same in the manner herein provided, within twenty-four hours after such receipt and prior to the sale of such cigarettes."

Section T41–10.0 provides:

" *Invoices or delivery tickets required of persons transporting cigarettes.*— Every person who shall possess or transport any cigarettes upon the public highways, roads or streets of the City of New York for the purpose of delivery, sale or disposition, shall be required to have in his actual possession invoices or delivery tickets for such cigarettes. The absence of such invoices or delivery tickets shall be *prima facie* evidence that such person is a dealer in cigarettes in the City of New York and subject to the provisions of this section."

Local Law 23 of 1938 (See Administrative Code of the City of New York) with which we are here concerned. From an examination of this law it will be noted that its purpose, as stated in the title, is to enable the city of New York to defray the cost of granting unemployment work and home relief by imposing a tax upon *sales of cigarettes in the city of New York*. Consonant with the purpose of imposing a sales tax upon cigarettes so sold, section T41–4.0 proceeds to define a " sale " as a transfer of title *for a consideration*, a " wholesale dealer " as one who sells to retail dealers for the purposes of resale only, and a " retail dealer " as one engaged in the business of selling cigarettes other than as a wholesale dealer. Clearly the defendant did not come within any of the definitions contained in this section.

Subdivisions c and d of section T41–4.0 apply to a retail dealer, which defendant was not. Moreover, even if defendant were considered a retail dealer under this section, it is apparent that by the provisions of subdivisions c and d the affixing of tax stamps might lawfully have been deferred twenty-four hours after receipt of the cigarettes. The arrest of defendant under that section was, therefore, premature. In this connection it is significant to note that the complainant testified it was his intention to keep defendant under observation " *till she made a final disposition of the cigarettes.*" As a matter of fact the cigarettes remained at all times in the possession of defendant who, at the time of her arrest, had made no final disposition thereof.

In discussing the above section respondent argues that whether or not defendant was guilty of a violation of the provisions thereof " depends solely on whether or not she was a retail dealer within the meaning of the Act, *i. e.*, whether or not she intended to resell, within the City of New York, any portion of the sixteen cartons." The difficulty with this argument, as it seems to us, is that there was no evidence that defendant was a retail dealer in the common acceptance of the term, and in the absence of an actual sale it would be distorting the meaning of the act to hold that a mere intent to sell constitutes one either a seller or retail dealer. Moreover, there is no evidence that defendant intended to make a transfer of title or possession * * * in any manner or by any means whatsoever *for a consideration.*" She merely bought the cigarettes for her own and for household use with household money and at the time of her arrest had made no resale thereof to any one.

As to section T41–10.0, respondent urges that the question is as to whether or not defendant did " possess or transport any cigarettes upon the public highways, roads or streets of the City of New York for the purpose of delivery, sale or disposition " without

having in her " actual possession invoices or delivery tickets for such cigarettes." As to this provision, the record discloses no purpose on the part of defendant other than the use of the cigarettes in her own household by herself and her brother with whom she resided. In our opinion this does not amount to a " delivery, sale or disposition " within the meaning or intent of the law. Moreover, the absence of invoices or delivery tickets is merely *prima facie* evidence that such person is a dealer in cigarettes within the meaning of this section, and such presumption was completely overcome by the evidence. We construe the words " delivery " and " disposition " used in this section to mean a sale or transfer *for a consideration.*

Reference is made both by appellant and respondent to *People* v. *Ryan* (274 N. Y. 149) wherein the indictment charged the defendant with carrying liquor and wine into the State of New York in violation of paragraph (d) of subdivision 1 of section 102 of the Alcoholic Beverage Control Law, reading as follows: " No common carrier or other person shall bring or carry into the State any liquors and /or wines unless the same shall be consigned to a person duly licensed hereunder to traffic in liquors and /or wines, as the case may be." It appears that the defendant had purchased in Connecticut eleven bottles of wine and one bottle of hard liquor and transported it in his car to the State of New York. The court found affirmatively that the liquor was not intended for sale or distribution but was owned by and was solely for defendant's personal use. In sustaining the trial court in its dismissal of the indictment, the Court of Appeals held that under the doctrine of *ejusdem generis* the words " or other person " must be construed to mean " no common carrier or other person *engaged in a similar occupation* " to that of common carrier " shall bring or carry into the State any liquors," etc., and since defendant was not engaged in an occupation similar to that of common carrier the trial court was justified in dismissing the indictment.

To be sure, the *Ryan* case (*supra*) cannot be cited as authority beyond the actual holding upon the facts involved. It should be noted, however, that at pages 153 and 154 of the opinion Judge RIPPEY says: " Having in mind the policy of the State and the purposes of the act, what construction is to be given to the statute under which the indictment is found? The words used in the applicable statute prohibit a ' common carrier or other person ' from bringing liquor into the State. Applying the doctrine of *ejusdem generis* to the expression ' No common carrier or other person,' which is contained in subdivision 1 (d), quoted above, the words ' No common carrier or other person ' should be construed to mean

' No common carrier or other person engaged in a similar occupation,' that is, no other person engaged in commercial transportation of goods owned by or consigned to others."

Upon the entire case we hold (a) that Local Law 23 of 1938, read in its entirety, applies to the commercial importation of cigarettes, and since defendant's purchases were merely for personal and household use, her conviction cannot be upheld, (b) conceding that a sale or resale by a private individual within the city of New York of untaxed cigarettes brought in from without the city would constitute such individual a dealer within the meaning of the law, there was in fact no such sale or resale by defendant, and (c) where the untaxed cigarettes have been purchased outside the city of New York and brought into the city of New York by a person for personal use, including, as in this case, household use, there is no violation of the local law. This result makes it unnecessary to consider the question of constitutionality raised by defendant.

The judgment should be reversed and the complaint dismissed.

FLOOD and DOYLE, JJ., concur.