THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* JAMES COONEY, Defendant.

City Magistrate's Court of New York, Borough of The Bronx, Summons Court, March 4, 1949.

*Samuel Foley, District Attorney (Milton Altschuler* of counsel), for plaintiff.

*Edward F. X. Ryan* and *Arthur M. Laufer* for defendant.

*Arthur M. Laufer* for New York State Food Merchants' Association, *amicus curiæ.*

PLOSCOWE, M. Is the owner or manager of a grocery store guilty of a violation of the Alcoholic Beverage Control Law if he permits a boy under eighteen years of age in his employ to deliver a food order to a customer which contains some bottles of beer? That is the basic issue in this case. The defendant insists that subdivision 2-a of section 100 of the Alcoholic Beverage Control Law was not intended to cover the activities of delivery boys employed by grocery stores. He is supported in this contention by counsel for the New York State Food Merchants' Association, which speaks for 20,000 grocery stores. It is necessary, therefore, to make a careful examination of the afore-mentioned section.

Subdivision 2-a of section 100 of the Alcoholic Beverage Control Law reads as follows: " No retailer shall employ, or permit to be employed, or shall suffer to work, on any premises licensed for retail sale hereunder, any person under the age of eighteen years, as a hostess, waitress, waiter, or in any other capacity where the duties of such person require or permit such person to sell, dispense or handle alcoholic beverages.''

This section was not part of the Alcoholic Beverage Control Law as originally enacted in 1934, but became law in 1936 (L. 1936, ch. 651). The problem presented by this case is the familiar one of what the Legislature intended when it used particular language in the statute. Did the Legislature intend to proscribe all contact with alcoholic beverages by underage employees of retail liquor license holders, or did it intend to apply the statute only to certain types of retail licensees, namely, those licensed for the sale of alcoholic beverages for consumption on the premises. The Legislature had power to do either. The question before us is what it has actually done in view of the language used in the above-mentioned section.

Where the language of a statute is not clear, one normally looks at the record of legislative debates or at the reports of legislative committees in order to determine its meaning. Research, however, has failed to disclose any committee reports or records of legislative debates which would throw light on the precise scope of subdivision 2-a of section 100. Accordingly

we must interpret this section by giving its words their normal meaning in the light of the usual canons of statutory construction.

(1) If we take the specific words, " hostess ", " waitress ", " waiter ", as a guide, it is apparent that the prohibitions of subdivision 2-a of section 100 refer only to retailers who sell alcoholic beverages, which are to be consumed on the premises. Hostesses, waitresses, and waiters are employed in taverns, restaurants or night clubs which sell alcoholic beverages for on-the-premises consumption, and not in grocery stores which sell beer for consumption off the premises. That the Legislature probably intended subdivision 2-a of section 100 to apply only to on-the-premises licensees, is also evident from the fact that subdivision 2-b of section 100 of the Alcoholic Beverage Control Law, which was enacted at the same time as subdivision 2-a of section 100, contains a prohibition against entertainers under eighteen years of age appearing on any premises licensed for the retail sale of alcoholic beverages. Entertainers are only used by cabarets and night clubs which hold retail licenses for on-the-premises consumption.

(2) However, subdivision 2-a of section 100 of the Alcoholic Beverage Control Law contains general language which may conceivably apply to grocery stores. " No retailer ", reads the statute, " shall employ * * * any person under the age of eighteen years * * * in any other capacity * * * to sell, dispense or handle alcoholic beverages." We cannot, however, read these words in splendid isolation. They must be considered together with the specific language previously adverted to. For there is a general rule of statutory construction, known as *ejusdem generis*, which requires us to limit the general language of the statute by the specific phrases which have preceded it.

As it is well stated in the authoritative volume on the interpretation of statutes (McKinney's Cons. Laws of N. Y., Book 1, Statutes [1942 ed.], § 239), the doctrine of *ejusdem generis* requires that " Where words of specific or inevitable purport are followed by words of general import the application of the last phrase is generally confined to the subject matter disclosed in the phrases with which it is connected; *for it is known by the company that it keeps; and though it might be capable of a wider significance if found alone, it is limited in its effect by the words to which it is an adjunct.* It may strengthen the general structure, but it cannot exceed the original outline." (Italics supplied.)

In our statute subdivision 2-a of section 100 specifically prohibits the employment of persons under eighteen as " hostesses ", " waitresses " or " waiters ". It also prohibits the employ of persons under eighteen in any other capacity where they sell, dispense or handle alcoholic beverages. The phrase " any other capacity " must be interpreted to mean other employments of similar character to hostesses, waitresses and waiters, such as bus boys, bartenders, stewards, etc., whose duties require them to sell, dispense or handle alcoholic beverages.

If this interpretation is correct, then the prohibitions of subdivision 2-a of section 100 must necessarily be limited to retailers who sell alcoholic beverages for *consumption on the premises,* for only this type of retailer employs such help. No grocer employs a waitress, waiter, bartender, steward or bus boy.

A precedent for limiting subdivision 2-a of section 100 to retailers who hold on-the-premises licenses, may be found in the preprohibition ancestor of the Alcoholic Beverage Control Law. The Liquor Tax Law of 1909 provided in subdivision F of section 30 (as amd. by L. 1918, ch. 473, § 10) that it shall not be lawful " To permit  *  *  *  any minor under the age of eighteen years  *  *  *  to sell or serve any liquor upon the premises."

(3) The violation of subdivision 2-a of section 100 is a misdemeanor; the punishment may be a $500 fine, one year of imprisonment, or both such fine and imprisonment. Subdivision 2-a of section 100 should not therefore be given a construction which would cover the activities of grocery delivery boys unless its language clearly requires it. For another basic rule of statutory construction is that *penal statutes must be strictly construed* against the party seeking their enforcement and in favor of the person being proceeded against. (McKinney's Cons. Laws of N. Y., Book 1, Statutes [1942 ed.], § 271). Innocent and lawful acts should not be deemed crimes unless the Legislature has expressly made them so. Penal statutes should not be extended to cases that are not clearly within their terms. No person should.be charged with crime unless he has the means of knowing that the act which he has done has been designated a crime by the Legislature. Penal statutes should not be " a mere trap to catch the unwary ", but their prohibitions should be clearly described and as clearly forbidden.

These principles have been freely applied by our courts. Thus a bootblacking stand has been held not to be a place of public

accommodation within the meaning of the civil rights statute. (*Burks* v. *Bosso,* 180 N. Y. 341 [1905].) A burglary statute which prohibits the breaking and entry into any building, railway car, vessel, booth, tents, shop "or other erection or inclosure" has been held not to include a large cylindrical gasoline pump. (*People* v. *Lamphere,* 219 App. Div. 422 [1927].) An air pistol was held not to be a pistol, revolver, or other firearm within the meaning of section 1897 of the Penal Law. (*People* v. *Schmidt,* 221 App. Div. 77 [1927].) Failure to furnish maid service, bed linens and towels was held not to be a violation of section 2040 of the Penal Law which made it a misdemeanor for the landlord to fail to provide heat, hot water, telephone service or any "other service or facility". (*People* v. *Gottesman,* 272 App. Div. 1066 [1947].) A liquor statute which prohibited a female under twenty-one from selling, supplying, or serving alcoholic beverages, was construed not to include the drawing of a glass of beer by a minor female servant of a hotel, when she did not actually deliver the beer to the guest but gave the beer to a waiter. (*Larkin* v. *Green,* 17 Australian L. J. 388 [1944].) A statute that prohibited boys under sixteen from working "in and about any saloon" was held not to cover the employment of boys in a bowling alley *under the saloon* even though the boys came into the saloon on occasion to receive their pay or to make change. (*Krstovich* v. *State of Indiana,* 186 Ind. 556 [1917].) A person who brings intoxicating liquor into the State *for his own use* has been held not to be guilty of violating paragraph (d) of subdivision 1 of section 102 of the Alcoholic Beverage Control Law which prohibits any "common carrier *or other person*" (italics supplied) from bringing liquor into the State unless it is consigned to the holder of a liquor license. (*People* v. *Ryan,* 274 N. Y. 149 [1937].)

Only by giving subdivision 2-a of section 100 a broad construction so as to make it apply to any type of retailer and any class of employee that comes into contact with alcoholic beverages can a misdemeanor be spelled out in this case. This would do violence to the afore-mentioned principle that penal statutes should be strictly construed. It would ignore the wise caution of Judge RIPPEY in *People* v. *Ryan* (*supra,* p. 152): "if the statute is ambiguous and two constructions can be given, the one must be adopted which will not cause objectionable results or cause inconvenience, hardship, injustice or mischief or lead to absurdity."

(4) When subdivision 2-a of section 100 was passed, the evils of the old preprohibition saloon and the prohibition speakeasy were still fresh in the minds of the Legislature. It is understandable, therefore, that the Legislature desired to protect youngsters under eighteen from the possibility of moral contamination which seemed to accompany the on-premises sale of liquor. But grocery stores and taverns are not in the same category. Work in a grocery store has never been deemed a morally hazardous occupation. Nor does it become one when the manager of a grocery store adds a few bottles of beer to a food order. It is therefore a little difficult to believe that the Legislature intended subdivision 2-a of section 100 to cover grocery stores which have beer licenses because the delivery of beer as part of a food order places the boy in great moral danger.

(5) The formation of good work habits is as important in the development of a child's character as protection from the abuses of alcoholic beverages. Such habits can best be formed by engaging in useful, gainful employment. Unfortunately, there are not many employment opportunities available to boys and girls who wish to work after school. Delivery work in a grocery store is one of a few such opportunities open to the ambitious boy who wishes to make a contribution to the family budget. If a grocery store must hire a person over eighteen to deliver beer, it is not likely that it will hire somebody under eighteen to deliver other grocery orders. The application of subdivision 2-a of section 100 to grocery stores will necessarily result in the elimination of employment opportunities for large numbers of deserving youngsters. That this result is not required by the moral dangers involved in the handling of beer as part of food orders is evident from the following comment of the National Child Labor Committee: "we wish to express our opinion that work in grocery stores which handle beer incidentally along with other commodities is very different from work in liquor stores or in establishments selling liquors for consumption on the premises. Provided that there is full compliance with the Child Labor Law of New York State * * * we can see no danger to boys' welfare which would justify depriving them of this opportunity for employment."*

It may be noted that our neighboring State of New Jersey permits boys to work in grocery stores which sell beer and

---

*Letter to Judge PLOSCOWE, Feb. 25, 1949, signed Gertrude Folks Zimand, General Secretary.

deliver food orders so long as they obtain a permit from the Alcoholic Beverage Control Board and do not themselves sell or dispense alcoholic beverages.

(6) Even if subdivision 2-a of section 100 covers the handling of alcoholic beverages by all underage employees of any type of retailer, we would still be compelled to acquit the defendant in this case. The police officer never saw the delivery boy actually touch or handle the beer. He came upon him when he was pushing his cart which contained the food order and the beer towards his destination. He ordered the boy back to the store and requested the boy to take the order out of the cart. Even this " handling " is denied by the defendant, the manager of the grocery store, who claims that he took the order out of the cart himself.

However, we are not resting our decision in this case on the narrow ground that there was no " handling " of the alcoholic beverage by the delivery boy. We will assume that the boy in this case performed the normal functions required of delivery boys generally, namely, putting the food order containing the beer into the cart, pushing the cart to the customer's house and delivering the order to the customer. We hold that the performance of such functions by a boy under eighteen employed in a grocery store under a duly issued employment certificate, is not a violation of subdivision 2-a of section 100 of the Alcoholic Beverage Control Law.

Accordingly, the motion of the defendant to dismiss the complaint is granted, and the defendant is discharged.