In the Matter of the Claim of JAMES R. KNAPP, Respondent, against SYRACUSE UNIVERSITY, Appellant.
WORKMEN'S COMPENSATION BOARD, Respondent.

Third Department, May 19, 1954.

*John L. Madison* for appellant.

*Nathaniel L. Goldstein, Attorney-General (John J. Quinn* and *Roy Wiedersum* of counsel), for Workmen's Compensation Board, respondent.

IMRIE, J. Claimant worked for Syracuse University, hereafter referred to as the employer, in the maintenance of its university building in downtown Syracuse, New York. The employer is a corporation organized and operated exclusively as an educational institution. The building is not located on the campus. It is not used in any of the educational activities of the owner, but is leased to various tenants with the net rentals being paid into the university treasury. Claimant suffered an illness in February, 1952, which disabled him until July, 1952, or later. The Workmen's Compensation Board awarded him benefits under the Disability Benefits Law (Workmen's Compensation Law, art. 9). The employer has appealed, contending that it is exempt from the coverage of the above-mentioned statute

by reason of the exception in subdivision 6 of section 201 thereof. The board found that the employer is not by definition an exempt employer and that employment by it is excluded from the obligations of the law only as to services performed for an exclusively educational purpose.

The Disability Benefits Law was enacted in 1949 as an addition to the Workmen's Compensation Law and as a part and parcel of the social legislation of the State. Its design is to accomplish the same ends as and to complement the Workmen's Compensation Law in according benefits to employees within this State. When approving the law, Governor Dewey stated, in part, " This bill (L. 1949, ch. 600) brings to the working men and women of the State of New York the benefits of social insurance against the hazards of sickness and disability not incurred in their employment." It is to be literally construed in order that its purpose may be accomplished and is to be read with the law of which it is a part.

Interpretation of the statute requires consideration of its spirit and purpose as well as the objects which the Legislature has sought to accomplish. " Literal meanings of words are not to be adhered to or suffered to ' defeat the general purpose and manifest policy intended to be promoted; ' all parts of the act must be read and construed together for the purpose of determining the legislative intent, and if the statute is ambiguous and two constructions can be given, the one must be adopted which will not cause objectionable results or cause inconvenience, hardship, injustice or mischief or lead to absurdity." (*People* v. *Ryan,* 274 N. Y. 149, 152.) " Our only duty is to ascertain the meaning and intent of the lawmakers. The intention of the lawmakers is the law. That intention is to be gathered from the necessity or the reason of the enactment." (*Matter of Schmidt* v. *Wolf Contr. Co.,* 269 App. Div. 201, 203, affd. 295 N. Y. 748.)

An analysis of this law discloses significance in that the impact of obligation on employers is keyed to " employment " instead of the mere existence of " employees ". Subdivision 4 of section 201 defines an employer as " a person, partnership, association, corporation, * * * who has persons in employment as defined in subdivision six of this section, but does not include the state, a municipal corporation, local governmental agency, other political subdivisions or public authority." No private employer is excepted therefrom.

Subdivision 5 of that section defines an employee as " a person engaged in the service of an employer in any *employment defined*

*in subdivision six of this section,* except the spouse or a minor child of the employer, and except a minister, priest, rabbi or member of a religious order." (Emphasis supplied.)

The only employment *defined* in subdivision 6 is " in any trade, business or occupation carried on by an employer," except that there is a proviso that " services performed for the state, a municipal corporation, local governmental agency, other political subdivision or public authority, and for any corporation, * * * organized and operated exclusively for * * * educational purposes, no part of the net earnings of which inures to the benefit of any private shareholder or individual " shall not " be deemed *employment* under this article ". (Emphasis supplied.)

Implicitly, therefore, any employer mentioned in subdivision 4, other than those there excepted, may be liable for contributions for employees engaged in any employment defined in subdivision 6, i.e., " any trade, business or occupation carried on by " it, unless such employees render services to it as a corporation " organized and operated exclusively for religious, charitable, scientific, literary or educational purposes, no part of the net earnings of which inures to the benefit of any private shareholder or individual ".

Such was the interpretation of the board in determining that the law requires a distinction to be made between employment by an educational institution in connection with the operation and maintenance of the institution itself and employment by it in connection with the operation and maintenance of other properties owned by it but not used for educational purposes. The determination accorded with Interpretive Bulletin (DB No. 1) issued by the chairman of the board on November 10, 1949.

We cannot escape the conclusion that the Legislature determined that a covered employer could have persons in his service in distinct and separate types of " employment ". Thus, under the exclusionary provisions of subdivision 6, such employer would not be liable for contributions on account of " farm laborers; casual employment * * *; service as golf caddies; and service during all or any part of the school year or regular vacation periods as a part time worker of any person actually in regular attendance during the day time as a student in an institution of learning."

We take note that twenty years before the enactment of the Disability Benefits Law the State recognized the artificiality of a distinction which denied compensation benefits to those in

certain employments for religious, charitable and educational institutions while allowing such benefits to others in similar employments with the generality of employers. Chapter 702 of the Laws of 1929 added to group 18 of subdivision 1 of section 3 of the Workmen's Compensation Law, following the words, " All other employments ", the words " except persons engaged in a clerical, teaching or non-manual capacity in or for a religious, charitable or educational institution," and the sentence, " A minister, priest or rabbi, or a member of a religious order, shall not be deemed to be employed or engaged in employment under the terms of this section." Successive amendments have brought many additional persons within the compulsory coverage of that law.

The history of section 715 of article 20 of the Labor Law (New York State Labor Relations Act) typifies the trend toward such separation of kinds of employment with eleemosynary institutions. Initially, that section stated that article 20 " shall not apply * * * to employees of charitable, educational or religious associations or corporations." (L. 1937, ch. 443.) In *Matter of Columbia Univ.* v. *Herzog* (269 App. Div. 24, affd. 295 N. Y. 605) it was held that petitioner university was excluded from collective bargaining with the local of a trade union whose members were service employees in the operation of a building owned by petitioner and leased for business and commercial purposes. At the legislative session following the court determination chapter 463 of the Laws of 1946 added the following clause to section 715, " except that the provisions of this article shall apply to employees of charitable, educational or religious associations or corporations whose services are performed in connection with the operation of a building owned or operated by such an association or corporation and used or occupied as a commercial or industrial enterprise operated for the production of profit, irrespective of the purposes to which such profit may be applied, and which employees are not engaged in the charitable, educational or religious activities of such association or corporation."

The suggested analogy between the exemptions of the Unemployment Insurance Law (Labor Law, art. 18) and the terms of the Disability Benefits Law does not indicate an intention to exempt the employer in this matter.

Under the former statute an educational corporation, among others, is expressly declared not to be an employer liable for contributions. (Labor Law, § 560, subd. 4.) Moreover, that

statute was enacted, in part, for the purpose of combatting and preventing the spread of unemployment.

Nor can we agree that the board's findings here read into the statute something which is not there.

Both in its terms and when read in context with the remainder of the Workmen's Compensation Law, the statute evinces a clear intent to continue the policy of distinguishing employment in a profit-making activity of educational and kindred corporations from employment incident to the primary purposes of their organization. It demonstrates legislative awareness of the practice of eleemosynary institutions seeking enhancement of their revenues by investing in business properties. It does not question the propriety of such practices, but is designed to avoid discrimination among the persons who, as employees, are the beneficiaries of our social legislation. To overlook the clear intent of the statute and deny to this claimant and his coemployees in this business enterprise of the employer benefits open to employees rendering substantially identical services in an adjoining building owned by an individual would '' cause inconvenience, hardship, injustice or mischief or lead to absurdity.'' (*People* v. *Ryan,* 274 N. Y. 149, 152.)

The decision and award should be affirmed, without costs to Workmen's Compensation Board.

BERGAN, COON and HALPERN, JJ., concur; FOSTER, P. J., not voting.

Award affirmed, without costs.