ONONDAGA COMMERCIAL DRY WALL CORP., Plaintiff, *v.* 150 CLINTON STREET, INC., Respondent.
UNITED STATES OF AMERICA, Intervenor-Appellant, *v.* ADIRONDACK CARPENTERS WELFARE FUND et al., Respondents
Fourth Department, June 29, 1967.

*James P. Shanahan, Assistant United States Attorney* (*Donald A. Statland* of counsel), for appellant.

*Richard F. Schwerzmann* and *Lewis G. Spicer, Jr.* for 150 Clinton Street Inc., respondent.

*Richard F. Schwerzmann* for Adirondack Carpenters Welfare Fund and another, respondents.

WILLIAMS, P. J.  The order appealed from denies the application of the United States of America, appellant herein, for an order restraining the prosecution of mechanics' lien foreclosure actions instituted in the Supreme Court under article 3 of the Lien Law.  The liens asserted in the article 3 actions were against a conceded balance due to the contractor by the owner, upon a contract for the construction of certain apartment dwellings in Jefferson County, New York.

After the institution of those actions, Onondaga Commercial Dry Wall Corp. commenced this present action in the Supreme Court of Onondaga County, based on the same factual situation, under the provisions of article 3-A (the trust provisions of the Lien Law).

All actions are now pending.  The United States of America was permitted to intervene in the latter action by court order, and it is in this action that the appeal arises.

The entire problem revolves around the construction of the language of section 79 of article 3-A of the Lien Law, which

provides: "Nothing in this article shall prevent the enforcement of any lien as provided in articles two and three of this chapter and neither such lien nor any satisfaction obtained thereby, shall be deemed a diversion of trust assets or an unauthorized preference."

The Special Term Justice construed this sentence to mean that the commencement of an action to enforce a lien under article 3 absolutely nullifies any benefits to the parties to an action to establish a claim to trust assets as defined in section 70 of article 3-A, unless, after the termination of the article 3 action and the distribution of funds thereunder, a surplus should remain. (All of the parties concede that there will be no surplus here.) Such a construction of a single sentence, so as to entirely destroy the beneficial provisions of article 3-A is completely inconsistent and inharmonious with the rules of statutory construction.

"Several rules of statutory construction come into play and the application of any or all of them sustains defendant's position. The first is the rule that to get the sense of a statute one must read the whole of it (*People* v. *Ryan,* 274 N. Y. 149; *People* v. *Dethloff,* 283 N. Y. 309)." (*People* v. *Martell,* 16 N Y 2d 245, 247.)

In *Matter of Vil. of Gowanda* v. *County of Erie* (25 A D 2d 18, 20, affd. 19 N Y 2d 735), we stated: "In *Essenfeld Bros.* v. *Hostetter* (14 N Y 2d 47, 52) in considering certain specific language of the Alcoholic Beverage Control Law, the court said: 'This is sweeping language but, as this court wrote some years ago in construing the latter subdivision, "In the interpretation of statutes, the spirit and purpose of the act and the objects to be accomplished must be considered. * * * Literal meanings of words are not to be adhered to or suffered to 'defeat the general purpose and manifest policy intended to be promoted'". (*People* v. *Ryan,* 274 N. Y. 149, 152.) "There is no more likely way to misapprehend the meaning of language — be it in a constitution, a statute, a will or a contract". JUDGE LEARNED HAND has reminded us, "than to read the words literally, forgetting the object which the document as a whole is meant to secure." (*Central Hanover Bank & Trust Co.* v. *Commissioner of Int. Revenue,* 159 F. 2d 167, 169; see, also, *Spencer* v. *Childs,* 1 N Y 2d 103, 106–07; *Cabell* v. *Markham,* 148 F. 2d 737, 739.)'

"There are numerous other authorities which apply this general rule of construction. (McKinney's Cons. Laws of N. Y., Book 1, Statutes, § 97, and cases cited.)"

Unless we were willing to hold that the institution of the mechanic's lien foreclosure action under article 3 renders a proceeding under article 3-A meaningless and ineffective, then the above-quoted language of section 79 cannot be construed literally. All the provisions of articles 3 and 3-A should be considered together, side by side. If that is done, it becomes apparent that the Legislature intended to provide that the passage of 3-A should not be interpreted as a repeal of article 3 or a diminution of its benefits. On the other hand, an intelligent legislative approach would not contemplate that the very definite beneficial provisions of 3-A be completely nullified and in effect repealed should an article 3 action be started. The legislative intention must have been, just as the statute says, only that the satisfaction of liens in a completed or terminated article 3 action should not be considered trust fund diversions. That declaration could have been the chief purpose of the enactment of the entire section.

Actually, the granting of the injunction which was sought would result in complete equity. The failure to grant such injunction will almost certainly result in the frustration of the priority lien of the Government provided for in subdivision 8 of section 77 of article 3-A of the Lien Law. If the injunction is granted, all of the proper parties will or can then be before the court by designation as parties or through orders permitting intervention, and the rights of the United States of America, if any, can be determined. If this produces a result adverse to any present article 3 parties, that result would be a proper one as respective rights are defined by the Legislature and contemplated by article 3-A. If the statute gives certain rights, they should not be denied simply because someone would be harmed by the assertion of those rights by one beneficially protected by the statute.

In denying the injunction, Special Term relied upon *Aquilino* v. *United States of America* (10 N Y 2d 271), apparently on the theory that the United States of America would have no rights against the trust fund in any event. This case is also urged by the respondent, but *Aquilino* is not a precedent that in any way affects this present case. In the present case, the lien that is asserted by the United States is for unpaid withholding and other taxes arising directly from construction work upon the improvement. In *Aquilino*, there was a prior general tax liability because of work which had nothing to do with the improvement which was involved. There the assessment list included general assessments against Fleetwood.

Sometime later, after the general tax had been assessed, Fleetwood, as general contractor, agreed with one Ada Bottone to remodel a restaurant which she owned. Thereafter, in the Summer of 1952, Fleetwood entered into subcontracts with Home Maintenance Company and Colonial Sand and Stone Company to furnish labor and materials for the remodeling job. At that time, the United States Government had no lien against the improvement under article 3-A of the New York State Lien Law. *Aquilino* was decided in July of 1961, and all of the events which gave rise to the fund in which the Government sought to participate took place no later than 1952. The section of the Lien Law (art. 3-A, § 71, subd. 2, par. [b]) that made the Government a trust beneficiary became effective in 1959. The Government's priority was established in subdivision 8 of section 77 of article 3-A. The determination in *Aquilino* was merely that the contractor had no "property interest" in the trust funds that could be reached or obtained by the Government. In the present case the Government relies on section 71 (subd. 2, par. [b]) which specifically provides that it shall be entitled to share in the trust funds. So obviously *Aquilino* should not be construed as authority to exclude the Government from participation, statutorily given, in the trust funds; (*Petrow* v. *Bonim Demolition & Constr. Corp.*, 51 Misc 2d 589.)

The Special Term Justice also relied on language of section 78 of article 3-A which excludes certain of its provisions from affecting the enforcement of a lien as provided in articles 2 and 3 of the Lien Law, but this language is not inconsistent with the interpretation here made but simply means that if an article 3 action has proceeded to its conclusion the provisions of article 3-A shall not interfere with that conclusion nor bar distribution under the terms of article 3.

The order appealed from should be reversed and the requested injunction granted.

HENRY, DEL VECCHIO and MARSH, JJ., concur; GOLDMAN, J., dissents and votes to affirm.

Order reversed and requested injunction granted, without costs.