In the Matter of ELLIS OSTROVE, Respondent, *v.* NEW YORK STATE TEACHERS RETIREMENT SYSTEM BOARD, Appellant.

Third Department, June 3, 1969.

164

*Louis J. Lefkowitz, Attorney-General (Ruth V. Iles and Ruth Kessler Toch of counsel), for appellant.*

*Mishkin & Strear (Lawrence H. Strear of counsel), for respondent.*

GREENBLOTT, J. These are appeals from a judgment of the Supreme Court at Special Term, entered September 22, 1967 in Albany County, which granted petitioner's application in a proceeding under CPLR article 78 to rescind and revoke certain resolutions adopted by the New York State Teachers Retirement System Board, and from an order of the same court, entered June 24, 1968, which adhered to its original decision upon reargument.

The State Teachers Retirement System was created in 1911 (L. 1911, ch. 449), and now is one of the largest in the nation; it has two billion dollars in assets and invests about two million dollars each day. Its operation is entrusted to the appellant board which is composed of nine persons elected for three-year terms by the members of the Retirement System (Education Law, §§ 504, 505); the statutory scheme provides for representation on the board of bankers, school administrators as well as teachers who are members of the Retirement System. Board members serve without compensation (Education Law, § 506, subd. 4; § 508, subd. 3).

Petitioner is a member of the appellant board. He contends that two resolutions adopted by appellant on January 11, 1967 violate subdivision 1 of section 508 of the Education Law,

and are therefore void. The disputed resolutions provide in part:

"RESOLVED, That the funds which will become available for investments for the coming year be invested at the discretion of the Finance Committee.

"RESOLVED, That the Finance Committee of the Teachers Retirement Board be authorized to sell securities held by the New York State Teachers Retirement Board and that the Head of Division of the Treasury in the Department of Taxation and Finance shall execute the necessary assignments and transfers in connection with such sales when authorized to deliver such securities on an order signed by the Chairman of the Finance Committee and the Secretary of the Retirement Board."

The crucial portion of subdivision 1 of section 508 of the Education Law states: "The members of the retirement board shall be the trustees of the several funds created by this article, and shall determine from time to time what part of the moneys belonging to the retirement system shall be invested. *When such board shall determine upon the investment of any moneys or upon the conversion or sale of any securities, it shall, by resolution duly adopted by a majority vote of the members of the board, direct the custodian to so invest the moneys or convert or sell the securities.*" (Emphasis supplied.)

The Finance Committee is composed of five members of the nine-member board. It is they who are in charge of the details of appellant's investments.

The appellant contends that it is impossible to have the entire board participate in daily investment decisions when it is considered that the board, is in essence, volunteer, and meets only four times each year. Moneys come in on a daily basis from employer-employee contributions, interest, and dividends. Decisions on the investment of funds, especially in secondary issues in the bond market, often must be made in a matter of minutes from the time of learning of the investment opportunity. It is necessary to buy and sell short-term government investments on a daily basis in order to meet the operating expenses of the system and still maintain minimum bank balances.

However, Special Term held the two resolutions to be illegal and ordered them revoked, basing its decision on the language contained in section 508, stating that "the Legislature has most clearly directed that a majority of the members of the board must pass upon its investments or sales."

We cannot agree with this interpretation. An examination of the pertinent provisions of the Education Law, coupled with an understanding of the complicated financial structure of the

Retirement System, burdened as it is with the herculean task of managing the day-to-day financial decisions which must be coped with in the investment of the tremendous sums of money which are entrusted to the board, impels a contrary result.

It is a basic rule of statutory interpretation that all parts of a statute are to be construed together to determine the legislative intent, and that each should be harmonized with the others (*Levine* v. *Bornstein,* 4 N Y 2d 241). Section 508 is part of article 11 of the Education Law, which established the State Teachers Retirement System. In reaching its decision, Special Term apparently disregarded two other provisions of that article. Subdivision 1 of section 504 vests in the board the " *general administration* and responsibility for the proper operation of the retirement system " (emphasis supplied). The board is authorized to establish " rules and regulations for the administration and transaction of its business and for the control of the funds created ". It is clear that the board was not to be burdened by the day-to-day details of administration, but could create committees to perform such duties. Furthermore, section 502 vests in the appellant all of the " powers and privileges of a corporation ". New York corporate law permits corporate boards to delegate policy-making power to committees (Business Corporation Law, § 712, subd. [a]). This, appellant has done in the by-law creating the Finance Committee and in the resolutions implementing it.

The interpretation placed on section 508 of the Education Law by Special Term was a literal one. However, " literal meanings of words are not to be adhered to or suffered to ' defeat the general purpose and manifest policy intended to be promoted '. (*People* v. *Ryan,* 274 N. Y. 149, 152.) " (*Essenfeld Bros.* v. *Hostetter,* 14 N Y 2d 47, 52.) There is nothing in section 508 that prohibits the practice of delegating the day-to-day administration of investments to the Finance Committee. Its only requirement is that the procedure by which the custodian is ordered to invest the moneys or sell the securities be accomplished by a resolution adopted by a majority of the board. Since the Finance Committee is the custodian for the board as to investments, and since the resolutions have been approved by a majority of the board, the provisions of section 508 have been complied with.

The order entered June 24, 1968, adhering on reargument to the original determination, should be reversed, on the law and the facts, and the petition dismissed, without costs. The appeal from the judgment entered September 22, 1967 should be dis-

missed since that judgment was superseded by the order made upon reargument.

HERLIHY, J. (dissenting). This appeal again questions the manner in which the appellant board handles the funds of the New York State Teachers Retirement System (hereinafter referred to as System). (See *Brigham* v. *McCabe,* 20 N Y 2d 525.) The board meets four times per year. It has a five-man Finance Committee which since 1921 has had the responsibility as to investments. A majority of this committee (3) determine what to buy, sell, etc. This committee meets only four times a year and relies upon its staff, one employee being in charge of mortgage operations and another being in charge of securities investments. When these officers determine upon an investment, they have in the past obtained the votes of the Finance Committee by telephone. The activities of the Finance Committee have always been formally approved by vote of the appellant at each of its meetings. It is obvious that the board has never by majority vote authorized a sale or investment before the same was made since about 1922.

On January 11, 1967 the board further delegated its responsibilities in regard to investments by resolving (1) that investments may be made at the discretion of the finance committee and (2) that sales of securities by the committee were authorized on an order signed by the chairman of the committee and secretary of the board.

Unless otherwise noted, all following statutory references are to the Education Law.

Section 502 provides for the System and that it has the powers and privileges of a corporation and shall transact all business under its corporate name.

Section 504 provides that the appellant is vested with "the general administration and responsibility for the proper operation of the retirement system". It also provides that the board shall make rules and regulations "for the administration and transaction of its business and for the control of the funds". The board is constituted of nine members.

Section 506 provides that the board should have "at least" four meetings per year; that the members serve without compensation; that "a majority of the members * * * shall constitute a quorum for the transaction of any business."

Section 507 provides: (1) that the board shall have the power to employ a secretary and technical and administrative employees; (2) that it has power to employ legal counsel; (3) that the division of treasury is custodian of funds — disbursements from

the fund " shall be made   *   *   *   only upon warrants signed by a member of the retirement board, or an official thereof, authorized to do so by resolution of the retirement board duly adopted   *   *   *   by a majority of its members "; (4 & 5) imposes duties on the division of treasury as to the bonds and accounting. (Similar to the direction in section 1106 of chapter 449 of Laws of 1911.)

Section 508 provides: (1) that the members of the board are trustees " and shall determine from time to time what part of the moneys   *   *   *   shall be invested. When such board shall determine upon the *investment* of any moneys or upon the *conversion* or *sale* of any securities, *it shall*, by resolution duly adopted by a *majority* vote of the members of the board, *direct* the custodian to so invest the moneys or convert or sell the securities." (Emphasis supplied. The foregoing is in substance the same as the duties of the board provided in section 1105 of chapter 449 of the Laws of 1911.) The remaining provisions do not appear applicable to the present case but generally provide for an actuary, public records, and what may be invested in.

Section 523 provides that the operation of the System shall be subject to the supervision of the State Insurance Department.

The issue is whether or not the board may delegate the authority to select investments and sell securities to the Finance Committee (a majority being three members) without itself passing first on the same.

Special Term found that a majority of the board must pass on investments and sales and, accordingly, directed the respondent to rescind and revoke the resolutions delegating such power to the committee. Special Term properly determined the validity of the resolutions.

Subdivision 1 of section 508 of the Education Law, as set forth, is clear and unambiguous and it does not directly or by implication permit or sanction anything less than a majority of the members of the board, which is five. (Cf. *Brigham* v. *McCabe, supra*, p. 533.) Under such circumstances, there is no necessity or requirement to resort to statutory construction.

As noted by the majority, all relevant parts of article 11 are to be construed together, however, no disharmony is perceived between the duty of general administration, the power to carry out such administration by rules and regulations, the corporate identity and the specific requirement of majority resolutions. While it is not necessary to determine the question, it is doubtful that the corporate identity given the New York State Teachers Retirement System in section 502 necessarily includes all

of the provisions of the Business Corporation Law and in any event, section 508 specifically makes the board the trustee of the funds of the System as opposed to the possibility of the board being a corporate board of directors in conducting the other affairs of the System. The foregoing general powers and duties of the board are in no way indicative of an intention to permit the board to deviate from the specific requirements of section 508 as to majority votes.

The fact that in the past the approval of three members of the Finance Committee has been the practice in authorizing loans does not give sanction to the method nor does it necessarily mean that the acts of the said committee are invalid, but failure after notice to correct the method might well lead to financial responsibility.

The law of which section 508 is a part was adopted in 1911 when the assets of the fund were substantially less, and there have been no amendments since that time which affect the direction of the Legislature that a majority of the board shall determine what portions of the fund shall be invested and direct the investment thereof in permitted securities. It should be observed that the investment possibilities available to the System have been greatly expanded since its inception. (See Laws of 1914, ch. 369, § 239 et seq.; Banking Law, § 235; Education Law, § 508 [subds. 9, 10].) There is not much doubt that the present method provided by the statute is archaic and inadequate to deal with the vast sums that the fund now controls. (See Brigham v. McCabe, supra; 27 A D 2d 100, 102.) No justification is shown on this appeal that requires this court to permit ratification by the act of three rather than five members of the board. There is no showing of such urgency as to require the court to legislate. If a change is needed, the proper method is for the Legislature to formulate a more modern and satisfactory manner of handling the investments of this vast financial empire.

It would appear that it is an unfair and unreasonable burden upon an uncompensated board to require its members to make such important daily decisions.

The obtaining of the approval of a majority of the board as required by the statute can result in little, if any, harm to the System. If the Legislature, after a reasonable opportunity to study the problem, fails to act, then the court might reconsider the matter.

The present record requires strict compliance with the statute.

GIBSON, P. J., REYNOLDS and COOKE, JJ., concur with GREENBLOTT, J.; HERLIHY, J., dissents and votes to affirm in an opinion.

Order entered June 24, 1968 reversed, on the law and the facts, and petition dismissed, without costs. Appeal from judgment entered September 22, 1967 dismissed, without costs.