D. Vincent Cerrito, J.
The petitioner, by this CPLR article 78 proceeding, seeks a judgment directing the respondent Staszak to immediately provide him with an emergency grant to pay overdue utility bills. Further, he seeks class action relief for all others similarly situated who face a utility shutoff for the nonpayment of overdue utility bills. Also, he seeks a judgment declaring subdivision 1 of section 303 of the Social Services Law unconstitutional to the extent that it denies aid to him and all others similarly situated. Lastly, he seeks a judgment requiring the respondent Staszak to desist from his policy of denying emergency assistance to Supplemental Security Income (SSI) recipients who are confronted with a utility shutoff and requiring the respondent Berger to promptly advise local social service districts that emergency assistance, including assistance in the category of emergency assistance to adults, must be provided, upon proper proof of *1052 need, to destitute SSI recipients who are threatened with a utility shutoff.
The court will dismiss this last request from the petition since the granting of such relief would constitute an unwarranted judicial intervention into governmental operations (see Ingram v Fahey, 78 Misc 2d 958).
The court will also dismiss that portion of the petition which seeks class action relief on the grounds such relief is not necessary for the fair and efficient adjudication of the controversy since subsequent petitioners will be adequately protected under the principles of stare decisis (Domine v Schreck, 37 NY2d 42; CPLR art 9, added by L 1975, ch 207).
The essential facts of this matter are undisputed. Prior to January 1, 1974, petitioner was a recipient of aid to the aged, blind and disabled from the County of Schenectady. As a part of this assistance, the county paid petitioner’s utility bills directly to the Niagara Mohawk Power Corporation (Niagara-Mohawk). On January 1, 1974, the petitioner was automatically transferred to the Federal SSI program (US Code, tit 42, § 1381 et seq.). Once this transfer occurred, the county no longer paid petitioner’s utility bills, nor did the Federal Government. Consequently, in March, 1975, petitioner received a bill from Niagara-Mohawk indicating that he owed them $625.77. Imprinted on this bill and on a subsequent one, was a notice that if it was not paid, the service would be disconnected. Upon receipt of these bills, petitioner applied to the County of Schenectady for emergency assistance. His application was denied on the grounds that he was not a welfare recipient and there was no authorization for payment of such bill for SSI recipients.
In his answer to the petition, the respondent Staszak alleges that petitioner’s application was properly denied in accordance with departmental regulations (18 NYCRR 397.1). He also maintains that this proceeding is improper because petitioner failed to exhaust his administrative remedies in that he did not seek a fair hearing.
This allegation is without merit. In emergency assistance cases, until the Department of Social Services formulates an expedited hearing procedure, an applicant does not have to seek a fair hearing before commencing an article 78 proceeding. (Domine v Schreck, 37 NY2d 42, supra; Matter of Borders v Nassau County Dept. of Social Servs., 34 AD2d 805.)
After the enactment of the Federal SSI program, the New *1053 York State Legislature recognized that it was inadequate and thus enacted title 8 of article 5 of the Social Services Law. In enacting this statute, the Legislature declared that emergency assistance for aged, blind and disabled persons with emergency needs which, if not met, would endanger the health, safety and welfare of such persons, was a matter of State concern and was a necessity in promoting the public health and welfare, until such time as the Federal SSI program is expanded to meet this Federal responsibility (Social Services Law, § 300).
To meet this State responsibility, the Legislature directed social service officials to provide emergency assistance, in accordance with the regulations of the department, to eligible aged, blind and disabled persons who need replacement of clothing, furniture, food and shelter which was lost as a result of fire, flood, or other similar catastrophe which could not have been foreseen by such person (Social Services Law, § 303, subd 1, par [a]).* The regulations promulgated in accordance with this statute set forth the same criteria (18 NYCRR 397.1).
The first issue to be resolved here, is whether the plaintiff could have foreseen his present predicament. Considering the evidence before the court which shows that the Schenectady County Department of Social Services did not specifically inform petitioner that it would no longer be paying his utility bills together with the fact that the record is devoid of any proof that Niagara-Mohawk sent any bills to petitioner before March, 1975, it is clear that petitioner could not have foreseen the situation he now finds himself in.
We now come to the determinative issue, which is whether petitioner’s threatened loss of power was as a result of a catastrophe within the statutory meaning of that term. In interpreting statutes, the spirit and purpose of the act and the objects to be accomplished must be considered and thus literal meanings of words are not to be adhered to or to be allowed to defeat the general purpose and manifest policy intended to be promoted by the statute (Essenfeld Bros. v Hostetter, 14 NY2d 47; People v Ryan, 274 NY 149). In this instance, it can be argued that section 303 (subd 1, par [a]) of the Social Services Law and the regulations thereunder limit emergency assist *1054 anee to those instances where the necessities of life have been lost because of a natural catastrophe. This court cannot subscribe to this argument because it is not in accord with the general purposes and manifest policy which the Legislature intended to promote by the enactment of title 8 of article 5 of the Social Services Law. In declaring the purposes of this statute, the Legislature made no differentiation between those who find themselves in need because of a natural catastrophe or a bureaucratic disaster, such as that which attended the implementation of SSI. Thus, consistent with the purposes of this statute, there can be no qualification of aid by limiting its availability to victims of natural catastrophies. Indeed to hold otherwise would effectively thwart the constitutional mandate and the statutorial embodiments of that mandate that the State and its subdivisions are to care for the needy (NY Const, art XVII, § 1; Social Services Law, § 62, subd 1; § 131-a, subd 10). Consequently, I find that petitioner’s threatened loss of power was as. a result of a bureaucratically engendered catastrophe which he did not foresee and therefore he is entitled to emergency assistance.
In summary, I will direct the respondent Staszak to meet the emergency needs of the petitioner by paying Niagara-Mohawk in accordance with the compromise suggested by the court and accepted by Niagara-Mohawk. All other requests of the petitioner are denied.

 There are several other items of need listed in this section, however, the one set forth here is the only one applicable to this situation.