In the Matter of the Application of C. G. GUNTHER'S SONS, Petitioner, for an Order against JOSEPH D. McGOLDRICK, Comptroller of the City of New York, Respondent.

First Department, June 24, 1938.

*R. L. von Bernuth* of counsel [*John F. Boyer* with him on the brief; *Gould & Wilkie*, attorneys], for the petitioner.

*Meyer Bernstein* of counsel [*Oscar S. Cox* with him on the brief; *William C. Chanler, Corporation Counsel*, attorney], for the respondent.

DORE, J.   This proceeding has been transferred to this court under article 78 of the Civil Practice Act, section 1296, to review a determination made by the comptroller of the city of New York after statutory hearings assessing a deficiency in sales tax under Local Law No. 20 (published as No. 21) of the New York City Local Laws of 1934, as amended, for the period from December 10, 1934, to December 31, 1935.   There is presented for consideration the validity of an additional assessment in the sum of $2,027.19 ($1,580.19 tax, $447 penalty), representing the tax with penalties imposed upon the petitioner's receipts arising from so-called " free storage " sales of furs.

The petitioner, a New York corporation having its place of business at 666 Fifth avenue, New York city, during the period in question was engaged in the manufacture and sale at retail of furs and other garments.   The petitioner's sales of furs are made principally during the fall and winter months.   It has been the custom in the fur trade for more than forty years and of the petitioner for at least ten or twelve years, when furs are sold during the spring and summer months, and occasionally during the fall months, to withhold delivery of the merchandise sold, at the customer's option, until such time as the customer requests delivery during the cold months.   There is no dispute as to the practice of the petitioner throughout the taxable period or that this practice had existed for many years before the sales tax went into existence. Nor is any claim made that there was any fraud or attempted evasion by the petitioner.

The " free storage " service was an additional service rendered the customer as a matter of policy to encourage purchase of furs during the summer and early fall.   When delivery of the merchandise was deferred to a later date, the sales vouchers and other inter-office records were marked with a notation " Free Storage."

The merchandise was sent to the petitioner's storage vault where it was kept apart from the goods in regular storage until the time for delivery arrived. When delivery was requested the merchandise involved in the transactions in question was sent to the customers at the out of town addresses indicated on the sales vouchers. No charge was made for keeping the goods in the storage vaults and no storage receipt was issued to the customer. The practice applied only to new goods. Until delivery was actually made to the customer, the petitioner insured the merchandise for its own account, paid all expenses in connection with delivery, and regarded the risk of loss as upon it. If before delivery the customer canceled the sale the petitioner refunded the whole or any part of the purchase price that had been paid or canceled any charge upon its books and the merchandise was returned to stock.

The petitioner's sales of this character that are at issue in this proceeding involve delivery outside of the city or the State of New York. The place of each such delivery was identified in an exhibit which was offered in evidence at the hearing held on October 13, 1936, and before the final hearing on October 29, 1936, was verified as to the out-of-town deliveries by a representative of the Emergency Revenue Division. No question is raised that the deliveries were not *bona fide* deliveries outside of the city or the State of New York. Deliveries to other States included deliveries to about fourteen different States, including States in the West.

The issue is whether the sales were consummated at the time of the purchase in New York city, as the comptroller contends, or whether the sales were incomplete and not consummated until delivery outside of the city and acceptance, as the petitioner contends.

The provisions of Local Law No. 20 of 1934, as amended by Local Law No. 24 (published as No. 25) of 1934, and No. 23 of 1935, so far as relevant, define a sale as the transfer of title or possession or both or any agreement therefor, and impose a tax of two per cent upon the receipts from every sale in the city of New York of tangible personal property sold at retail.

The enabling act, which authorized the city of New York to enact Local Law No. 20 and amendments thereof, imposing a sales tax, expressly provided: " This act shall not authorize the imposition of a tax on any transaction * * * consummated outside of the territorial limits of any such city, notwithstanding that some act be necessarily performed with respect to such transaction within such limits."

In our opinion, under the undisputed facts in this record, the transactions in question involving future delivery outside of the city of New York, were not taxable as they were not consummated until the merchandise was delivered to the petitioner's customers outside the territorial limits of the city, including merchandise delivered in interstate commerce to points outside of the State of New York. The delay in delivery arising out of the free storage of the goods and holding them pending delivery constituted neither a delivery to the customer within the city of New York nor a consummation of the sale. The customers wanted delivery at a future day. The term "free storage" was used by the petitioner in its records for its own purposes in keeping the merchandise until delivery. As indicated, the petitioner assumed all expenses involved in making deliveries at the specified places and all risk of loss until delivery; against such loss it insured the merchandise for its own account and not for the customers'.

Section 100 of the Personal Property Law, rule 5, reads as follows: " If the contract to sell requires the seller to deliver the goods to the buyer, or at a particular place, or to pay the freight or cost of transportation to the buyer, or to a particular place, the property does not pass until the goods have been delivered to the buyer or reached the place agreed upon." It is true that this rule is only a presumption to ascertain the intention of the parties unless a different intention appears. From the facts in this record no other intention is shown. The sales were not regarded as complete until delivery and acceptance.

In *Matter of United Artists Corporation* v. *Taylor* (248 App. Div. 208, 209), in annulling the comptroller's determination imposing a tax upon the licensing of motion picture films for exhibition outside the territorial limits of the city of New York, this court said: " In the particular instances now under consideration the transaction, though originating within the city of New York when the license is granted here, is ' consummated ' when the motion pictures are exhibited under the license outside the limits of the city. By express rulings the comptroller has recognized that the city may not impose a tax upon merchandise delivered outside the territorial limits of the city, even though the contract of sale is concluded within the city. For identical reasons we think that a license to exhibit motion picture films, though executed within the city, is not taxable where the license requires that it be exercised beyond its territorial limits. The ' transaction,' which the local law defines as a sale, is not ' consummated ' until the film is exhibited under the ' license to use ' beyond the city limits." In affirming that ruling (273 N. Y. 334, 341), the Court of Appeals said: " In

so far as the transfer of possession of the prints and the license to exhibit them is effected in territory outside the city, then no tax is applicable." In this case, the transactions in question were not consummated until the delivery of the furs beyond the city limits.

The determination of the comptroller with respect to the disputed tax and penalties thereon should be annulled, with fifty dollars costs and disbursements to the petitioner, and the respondent directed to refund to the petitioner the sum of $2,027.19.

O'MALLEY, TOWNLEY, GLENNON and COHN, JJ., concur.

Determination of the comptroller with respect to the disputed tax and penalties thereon unanimously annulled, with fifty dollars costs and disbursements to the petitioner, and the respondent directed to refund to the petitioner the sum of $2,027.19. Settle order on notice.