In the Matter of the Application of LEON J. WYLEGALA, Petitioner, for an Injunction against the RAILWAY EXPRESS AGENCY, INC., Respondent.

Supreme Court, Erie County, January 28, 1942

*Moore & Barrett*, for the petitioner.

*Babcock, Hollister, Newbury & Russ*, for the respondent.

LYTLE, J.   Section 123 of the Alcoholic Beverage Control Law of the State of New York provides that if any person shall engage or participate or be about to engage or participate in unlawful manufacture, sale or traffic in alcoholic beverage, the Liquor Authority or any taxpayer may bring by petition to Supreme Court an application for an injunction.   Such is the nature of this proceeding, brought by a taxpayer.

The petition alleges that for upwards of one year last past, the respondent has engaged in the transportation of such beverages from the city of New York to the city of Buffalo.   Licensed retail liquor dealers in the city of New York have been offering such beverages for sale to the public at prices sufficiently lower than those prevailing in Buffalo to entice some of the Buffalo trade. The price differential has been sufficiently large to permit the payment of transportation charges and still leave enough in the way of a saving to attract up-State purchasers.

Besides being a taxpayer, the petitioner is a licensed retail liquor dealer selling in Buffalo for off-the-premises consumption, and is also the president of the Up-State New York Liquor Package Stores Association, Inc.   Through the use of the facilities of the respondent express agency, Buffalo consumers effect delivery of orders for such beverages.   As orders can be placed by mail, the transactions have been completed without the Buffalo purchasers' journeying to the place of business of the New York city sellers.   And so the lines of this legal battle are drawn.

The arguments in support of the petition reflect the ingenuity of the petitioner's able counsel.   Section 65 of the Alcoholic Beverage Control Law prohibits sales to persons under eighteen years of age, intoxicated persons and habitual drunkards.   Certain other sales are also prohibited, as for example to peddlers (§ 105, subd. 12) or in excess of a stated quantity (§ 105, subd. 13).   The argument is made that in the transactions herein sought to be enjoined, there exists no safeguard or insurance that the sales comply with the stated restrictions.   The further argument is made that violations must necessarily have occurred.   The difficulties with this line of argument are that no proof of any violations has been presented, and before the court can speculate as to violations, it must be assumed that clerks in retail liquor stores

are endowed with keener powers of observation and more profound judgment of human nature than are the delivery agents of the respondent. In the absence of proof, the argument is no more serious an attack upon the respondent than it is on retail liquor dealers in general. For such mischief or harm as may be shown to exist in either instance, there is a remedy. (*Wilcox* v. *Conti*, 174 Misc. 230.) To check proven violations, there are sanctions. (Alcoholic Bev. Control Law, § 130; Penal Law, § 29.)

Another line of argument in support of the petition deals with the construction of certain sections of the Alcoholic Beverage Control Law. Section 102 provides in part:

" 1. * * * (c) No alcoholic beverages shall be shipped into the State unless the same shall be consigned to a person duly licensed hereunder to traffic in alcoholic beverages.

" (d) No common carrier or other person shall bring or carry into the State any alcoholic beverages, unless the same shall be consigned to a person duly licensed hereunder to traffic in alcoholic beverages.

" (e) Subdivisions (c) and (d) hereof shall apply to alcoholic beverages, either in the original package or otherwise, whether intended for personal use, as well as otherwise, and to interstate, as well as intrastate, shipments or carriage."

The argument of the petitioner in this regard suggests itself immediately. He contends that the transportation afforded by the respondent is intrastate shipment or carriage, and, therefore, by the force of subdivision (e) made subject to the prohibitions contained in subdivisions (c) and (d).

The interpretation of these three subdivisions standing alone would not be easy. Subdivision (d) does purport to subject " intrastate " shipments to the ban on shipping, bringing or carrying " into the State." How there can be, in a broad sense, intrastate shipment into a State defies explanation. There is a patent contradiction of terms. A reasonable interpretation might be that the Legislature intended to embrace the part of a journey into the State which takes place wholly within the State. It does not seem necessary to pass upon the point in determining this proceeding.

There is another section of said law which is applicable here and which is not ambiguous. It is section 116 and it provides in part: " provided, however, * * *; (c) that alcoholic beverages may be delivered from a licensee to a steamship or railroad station or terminal for purposes of transportation, and may be delivered from a steamship or railroad station or terminal to a purchaser for purposes of consumption, or to a licensee by any *bona fide* trucking agency holding a permit under this chapter."

If the deliveries in question are made to a purchaser for the stated purpose, the statutory provision last quoted is sufficient authorization for the practices which the petitioner seeks to enjoin. Realizing this, the petitioner attacks the status of the consignee of the deliveries on the ground that in a collect on delivery transaction, the consignee is not a purchaser until the goods are delivered and the purchase price paid. The answer to this argument is to be found in section 100 of the Personal Property Law:

"Unless a different intention appears, the following are rules for ascertaining the intention of the parties as to the time at which the property in the goods is to pass to the buyer.

"Rule 1. Where there is an unconditional contract to sell specific goods, in a deliverable state, the property in the goods passes to the buyer when the contract is made and it is immaterial whether the time of payment, or the time of delivery, or both, be postponed. * * *

"Rule 4. * * * 2. Where, in pursuance of a contract to sell, the seller delivers the goods to the buyer, or to a carrier or other bailee (whether named by the buyer or not) for the purpose of transmission to or holding for the buyer, he is presumed to have unconditionally appropriated the goods to the contract, * * *. This presumption is applicable, although by the terms of the contract the buyer is to pay the price before receiving delivery of the goods, and the goods are marked with the words ' collect on delivery ' or their equivalents."

It is true, as the petitioner contends, that the above rules apply only in the absence of the manifestation of a contrary intention by the parties; however, no evidence of such contrary intention or the manifestation thereof has been adduced. In fact, the documents attached to the petition indicate that the parties to the transactions represented thereby left the determination of their intentions to the presumptions of law.

Although the facts in *People* v. *Ryan* (274 N. Y. 149) are not sufficiently similar to those in this proceeding to warrant reliance thereon as authority for the determination of the questions herein, still that decision is authority for the proposition that said section 102 is not to be made the basis of destroying the rights created by said section 116. I find that in the transactions complained of, title to the said beverages passed to the consignee upon delivery to the respondent and that the subsequent transportation thereof by the respondent was not in violation of law. It follows that the petition must be dismissed. Prepare and submit an order accordingly.