In the Matter of COLONIAL LIQUOR DISTRIBUTORS, INC., Appellant-Respondent, against JOHN F. O'CONNELL et al., Constituting the State Liquor Authority, Respondents-Appellants, and NEW AMSTERDAM CASUALTY COMPANY, Respondent.

Third Department, June 29, 1945.

*Charles W. Newmark,* attorney (*Frank L. Wiswall* and *Monroe I. Katcher, II,* of counsel), for appellant-respondent.

*Elvin N. Edwards,* attorney (*Henry V. Doell* of counsel), for respondents-appellants.

LAWRENCE, J. The State Liquor Authority (hereafter referred to as the Authority) about October 1, 1943, issued to Colonial Liquor Distributors, Inc. (referred to as the Colonial), two licenses to engage in the sale of liquor and wines at wholesale at (1) 36 Broadway, Menands, N. Y. (referred to as the Albany license), and (2) 16–18 Pine Grove Avenue, Kingston, N. Y. (referred to as the Kingston license.) These licenses were issued for the period ending September 30, 1944. The learned justice seems to have proceeded upon the theory that the proceeding fell within the first five subdivisions of section 1296 of the Civil Practice Act. The proceeding should have been transferred to the Appellate Division in the first instance. As it is now before the Appellate Division and as no particular claim was made that it should have been transferred in the first instance, I see no reason why it cannot now be considered and disposed of.

Regarding the Albany license, it would seem that this license was revoked because of the conviction of the licensee and its president in the United States District Court for selling liquor in excess of the ceiling price fixed by the Office of Price Administration.

There is one class of cases for which licenses *must be* revoked under section 118 of the Alcoholic Beverage Control Law. Selling in excess of the ceiling price is not one of the causes of

revocation there stated. Such selling would not be a crime. It would be an infraction. There is another class of violations in which a license *may be* revoked. These must be enumerated in accordance with section 114 of the Alcoholic Beverage Control Law. Subdivision 5 of section 114 provides that the Authority will print and furnish to each licensee a statement of the causes for which licenses may be revoked. This statement is to accompany the issuance of the license or to be delivered as soon thereafter as practicable, together with any amendments thereafter made. It is true that the section further states that failure to send or receive the statements of amendments shall not be an excuse for any violation. The Authority furnished the licensee with a copy of the statement of causes for which a license must be revoked and a statement of the causes for which a license may be revoked. The mandatory causes are listed. The discretionary causes are listed. These seem to have been furnished in 1936. On October 4, 1943, when the licensee received its Albany license, it also received a pamphlet containing the laws and rules of the Authority, and a statement of the causes for revocation. Nowhere does there appear any statement that a violation of the Office of Price Administration price regulations is a cause for revocation. (See *People* v. *Schacher,* 181 Misc. 769.)

It is argued by the Authority that the Legislature has conferred upon the Authority broad discretionary powers to revoke, cancel or suspend a license for cause. The difficulty with that broad interpretation is that the causes for which revocation may be made are listed, none of which include the cause for which the Albany license was revoked.

Under the circumstances, it would seem that the Authority acted without warrant or authority in revoking the Albany license.

Regarding the Kingston license, the order at Special Term, revoking the license at Kingston, confirmed the determination of the Authority. The business at Kingston has been maintained since December, 1933. One license for the Kingston premises, now under consideration, was issued October 1, 1943, to terminate October 1, 1944. On September 16, 1944, the Colonial received notice of a hearing to revoke both licenses. The charges made were numbered 1 to 8. Charges 1, 2, 6 and 7 dealt with violations of Office of Price Administration ceiling prices and have been disposed of above. Charges 3 and 8 alleged that the licensee violated subdivision 10 of section 104 of

the Alcoholic Beverage Control Law by failing to keep accurate records of transactions and that invoices did not state true prices at which sales were made. Charges numbered 4 and 5 alleged violations of subdivision 2 of section 100 of the Alcoholic Beverage Control Law in that the licensee sold and agreed to sell liquor in this State for purposes of resale to a person who was not licensed to sell at the time of such sale, and also received orders from persons to purchase liquor when such persons did not hold a permit as required by paragraph h of subdivision 1 of section 99-b of the Alcoholic Beverage Control Law.

The hearing was held before Deputy Commissioner Edwin H. Kaufman. N. L. Haver represented the licensee. Richard A. Plunkett appeared as investigator. Jack Reinstein appeared for the investigator. The Albany and Kingston licenses were both considered at this hearing. Rules of procedure of the Authority were received in evidence. The indictment in the United States District Court was marked for identification. Exhibit 3A, received at the hearing, shows that there was a plea of guilty to the charge of selling liquor in excess of ceiling prices. It was stipulated that the licensee would admit the charges in No. 8 above, to the effect that the invoices failed to disclose the true prices of merchandise and that the prices were higher than shown in the invoices; with a further stipulation that all the transactions were prior to the license period and were all for sales outside the State. It was further admitted by the attorney for the licensee that the books and records of the licensee failed to indicate that it received the excess prices over the prices shown in the invoices; also that the licensee received orders from Jac Brown and from Gus Blancand; that Blancand did not have a proper permit or license in this State; that all sales referred to were made to wholesalers duly licensed in their respective States, that the sales were consummated in this State but were all during a period prior to the license period and were consummated, so far as delivery and payment were concerned, outside the State; and further, that the licensee did not know that he could not negotiate sales unless the purchaser had a solicitor's or negotiator's permit. Further, that Jac Brown did not hold a proper permit or license and that the Colonial did accept an order from him in September, 1943, for a quantity of liquor, shipped to Shapiro in Texas between November 30, 1943, and January 4, 1944. There was no evidence that the sales price to Shapiro was not properly reflected by the invoices.

It also appeared that all these sales were out of the Kingston office and that the Albany office had nothing to do with them. Vincent J. Andretta, president of the Colonial, stated in an examination that the negotiations with Brown, above referred to, started in August, 1943, and were concluded about September 2, 1943, but delivery was made after October 1, 1943.

Section 62 of the Alcoholic Beverage Control Law provides that a license may be issued to sell or deliver liquor to persons outside the State pursuant to the laws of the place of such sale or delivery. It is contended by the Colonial that it sold only to a licensed wholesaler outside the State, as it had a right to do, and that it did not violate subdivision 2 of section 100 of the Alcoholic Beverage Control Law. Subdivision 2 of section 100 of the Alcoholic Beverage Control Law is as follows: "No manufacturer and no wholesaler shall sell, or agree to sell or deliver in this state any alcoholic beverage for the purposes of resale to any person who is not duly licensed pursuant to this chapter to sell such beverages, at wholesale or retail, as the case may be, at the time of such agreement and sale."

Paragraph h of subdivision 1 of section 99-b of the Alcoholic Beverage Control Law provides that the Authority may issue a permit to a purchasing agent in this State to receive an order or purchase liquor from a licensed wholesaler in this State for delivery to his principal outside the State. It is contended by the Authority that there is no evidence to show that either Blancand or Brown was a purchasing agent in this State for any licensed wholesaler outside the State and therefore that paragraph h of subdivision 1 of section 99-b does not apply. I do not find any evidence of such agency. It appears, however, that the attorney for the Colonial stipulated that Brown did not hold a proper permit or license so that the Colonial could receive from him an order for liquor. It was further stipulated that Colonial did accept an order from Brown for liquor which was shipped between November 30, 1943, and January 4, 1944, to I. B. Shapiro, in care of Select Wines, at Houston, Texas, with a further added stipulation that the order was received from Brown in September, 1943.

It must be conceded that all these alleged violations, with this one exception, occurred prior to the licensing period and it would seem elemental that such violations could not be the basis for revocation. The only exception would seem to be the shipment to Shapiro in care of Select Wines at Houston. Negotiations for that order were started in August, 1943, and were concluded on or about September 2, 1943, and, as above indicated, delivery was made subsequent to October 1, 1943. No

charge is made, with reference to this transaction, that the books were not properly kept. It would seem that the sole basis for revocation was the order and shipment to Texas. The Trial Justice in his opinion states that the Authority could find that in some part the transactions occurred within the license period and that, as the factual basis was not challenged before him, the determination to revoke the Kingston license should be confirmed.

Now that the matter is before this court as if it had been sent here in the first instance, determination may well rest on whether the sale in the shipment to Texas was consummated during the license period. It may be argued with force that the shipment was not appropriated until delivery. (*Matter of Wylegala* v. *Railway Express Agency, Inc.*, 177 Misc. 1071, affd. 264 App. Div. 937; *Matter of Gunther's Sons* v. *McGoldrick*, 255 App. Div. 139, affd. 279 N. Y. 148; Personal Property Law, § 100.)

It would appear in this case, however, from the evidence that the sale was concluded about September 2, 1943. An insistence that the sale was not completed until after October 1, 1943, would seem to be too insignificant to warrant consideration.

The order of the Special Term in the proceeding with reference to the Albany County premises should be vacated. Under the provisions of section 1296 of the Civil Practice Act, this court, treating the matter as if transferred to it in the first instance, determines that the decision of the State Liquor Authority should be annulled.

The order of the Special Term regarding the premises at Kingston, Ulster County, should be vacated. Under the provisions of section 1296 of the Civil Practice Act, this court, treating the matter as if transferred to it in the first instance, determines that the decision of the State Liquor Authority should be annulled.

The determination of the State Liquor Authority should be annulled, with $50 costs and disbursements.

All concur.

Order of the Special Term in the proceeding with reference to the Albany County premises is vacated. Under the provisions of section 1296 of the Civil Practice Act this court, treating the matter as if transferred to it in the first instance, determines that the decision of the State Liquor Authority be annulled.

Order of the Special Term regarding the premises at Kingston, Ulster County, vacated. Under the provisions of section

1296 of the Civil Practice Act, this court, treating the matter as if transferred to it in the first instance, determines that the decision of the State Liquor Authority be annulled.

Determination of the State Liquor Authority is annulled, with $50 costs and disbursements.