**AMERICAN TRAVELERS CLUB, INC.,**
**Plaintiff,**

**v.**

**Donald S. HOSTETTER, Benjamin Balcon, William H. Morgan, John C. Hart and Robert E. Doyle, being the Chairman, Members and Commissioners of the State Liquor Authority of the State of New York, Defendants.**

United States District Court
S. D. New York.

June 24, 1963.

---

Moss, Wels & Marcus, New York City (Richard H. Wels and James L. Adler, Jr., New York City, of counsel), for plaintiff.

Louis J. Lefkowitz, Atty. Gen. of New York (Irving Galt, Asst. Sol. Gen. of New York, and George D. Zuckerman, Asst. Atty. Gen. of New York, of counsel), for defendants.

Galef & Jacobs, New York City (William M. Ivler, New York City, of counsel), for Railway Express Agency, Inc., amicus curiae.

Before MEDINA, Circuit Judge, and HERLANDS and FEINBERG, District Judges.

MEDINA, Circuit Judge.

This is an action brought by plaintiff, American Travelers Club, Inc., a Delaware corporation with its principal place of business in New York State, against the Chairman, Members and Commissioners of the New York State Liquor Authority, seeking a declaratory judgment and injunction against the enforcement of Bulletin No. 359 issued by defendants relative to the shipment into New York State of alcoholic beverages declared "to follow" returning United States residents. The complaint alleges that the Bulletin is contrary to the New York Alcoholic Beverage Control Law and in violation of the Supremacy, Commerce, Due Process, Privileges and Immunities, and Equal Protection Clauses of the United States Constitution. We hold, (1) that federal question jurisdiction exists under 28 U.S.C. § 1331, and that this three-judge District Court was properly convened under 28 U.S.C. §§ 2281, 2284; (2) that the Pullman doctrine of "equitable abstention" (Railroad Comm. of Texas v. Pullman Co., 1941, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971) should not be applied to the instant case; (3) that as applied to plaintiff's business operation Bulletin No. 359 is neither contrary to the New York Alchoholic Beverage Control Law, nor in violation of the Supremacy, Commerce, Due Process, Privileges and Immunities, or Equal Protection Clauses of the United States Constitution. Accordingly, the complaint is dismissed on the merits and judgment is granted for defendants.

I

The Facts

Based upon the testimony given and the exhibits received into evidence at the hearings held before this Court, the details of plaintiff's business operation and the nature of the controversy that has arisen between the parties may be stated as follows:

Plaintiff was incorporated in Delaware in March of 1960 and maintains its principal place of business at the Crossway Idlewild Inn near Idlewild Airport in the

City of New York. Paul Stevens, the president and principal stockholder of plaintiff, testified that plaintiff "aids overseas travelers in making purchases and providing information related to local conditions and also engages in the mail order business of liquor, cigarettes and gifts." The liquor phase of the business, with which this suit is exclusively concerned, has been conducted since December of 1960. Plaintiff has never received or applied for any sort of license issued by the New York State Liquor Authority. On December 28, 1962, defendants, the Chairman, Members and Commissioners of the New York State Liquor Authority, issued Bulletin No. 359 addressed to "All Common Carriers of Passengers or Freight" on the subject of the "Importation of Alcoholic Beverages." [1] Defendants thereafter advised the United States Commissioner of Customs of the issuance of such bulletin, which superseded the previous Bulletin No. 263, dated July 20, 1954,[2] and the Surveyor of Customs, Outside Division, Port of New York, has issued Surveyor's Order No. 3–1963 in implementation of Bulletin No. 359.[3] The result has

1. "This Bulletin is designed to clarify the situation with respect to alcoholic beverages declared as 'following' a person entering the State of New York and supersedes Bulletin #263 of July 20, 1954 in that respect.

"Under the Alcoholic Beverage Control Law of the State of New York (Section 102, subdivision 1(c)) such alcoholic beverages may not be shipped into this State since the statute prohibits the shipment of alcoholic beverages into the State of New York unless they are consigned to a person duly licensed to traffic in alcoholic beverages.

"This agency will so advise the Commissioner of Customs and request that he take appropriate action.

"In view of the fact that some travellers may have arranged for such shipments under the assumption that they are permitted under the law of New York, this agency shall also advise the Commissioner of Customs that shipments of one gallon or less of alcoholic beverages arriving prior to March 1, 1963 may be released."

2. "In order to promote the convenience of your passengers we are forwarding this bulletin to you with the hope that it will clarify pertinent provisions of the New York State Alcoholic Beverage Control Law and the mechanics of the administration of those provisions by the State Liquor Authority.

"Under date of March 30, 1954, the New York State Department of Taxation and Finance addressed the following communication to all steamship companies and airlines:

\* \* \* \* \*

" '(b) When alcoholic beverages are declared as "following" or are shipped as baggage or freight unaccompanied by a passenger, the United States Customs has agreed not to release such beverage until the consignee shall have procured the necessary permit from the New York State Liquor Authority, located at 270 Broadway, New York City, and shall have paid the New York State tax on alcoholic beverages so imported, to the Department of Taxation and Finance, Beverage Tax Section, at any of its branches throughout the State. Our New York Office is Room 408, Mr. LaMotto, 96 Worth St., New York City.'

"It is important to note that in each instance where a quantity of alcoholic beverages in excess of one gallon is declared to be 'following' the passenger bringing it into this state must obtain a permit from the State Liquor Authority. *If the quantity is one gallon or less, no permit is required.*"

3. "February 27, 1963
"Inspectors of Customs
   and Others Concerned:
"The following instructions with regard to the shipment into New York State of alcoholic beverages have been received from the Collector's office. Please be guided accordingly.
"The New York State Liquor Authority has called attention to its Alcoholic Beverage Control Law (section 102, sub-division 1(c) to the effect that alcoholic beverages may not be shipped into New York State unless they are consigned to a person duly licensed to traffic in alcoholic beverages \* \* \* please be governed by the following:
"1. Shipments of the alcoholic beverages referred to must be listed on the vessels inward foreign manifest. The lists of parcels or unaccompanied baggage are integral parts of the vessels manifest.
"2. Shipments of alcoholic beverages that arrive at the Port of New York *PRIOR* to March 1, 1963 may be re-

been that the Customs Service has refused to release liquor arriving in the Port of New York subsequent to March 1, 1963, and which was declared by plaintiff's customers on arrival from foreign countries as duty-free liquor "to follow." Since March 1, 1963, the Customs Service in the Port of New York has also refused to issue Customs Form 3351, entitled "Release For Unaccompanied Tourist Shipment," to plaintiff's customers for alcoholic beverages declared "to follow" on the standard Customs Form 6063. The proof is to the effect that plaintiff has been able to clear shipments for residents of the State of New Jersey, and there is no evidence that shipments to residents of states other than New York have been affected. The Surveyor's Order expressly states that it does not apply to alcoholic beverages which physically accompany returning tourists, and we understand this suit to concern only the right of plaintiff to conduct its unlicensed business operation with respect to alcoholic beverages which "follow" returning New York residents.

> leased as at present even though the release from Customs custody is accomplished one or more days *subsequent* to February 28, 1963.
>
> "3. Shipments of *manifested alcoholic beverages* arriving on vessels on and after March 1, 1963 shall *NOT* be released from Customs custody except by means of a permit issued by the Collector. Inquiries relating to shipments of alcoholic beverages manifested as cargo shall be referred to the Liquor and Quota Section, Entry Division, Room 240, telephone extension 572. Also note No. 7.
>
> "4. In the normal course of events trunks, cases, crates, valises and vans that may be manifested as 'Personal Effects' or 'Household Effects' or as 'Unaccompanied Baggage' will or may be found by the examining officer to contain one or more containers of alcoholic beverages. Such alcoholic beverage shall *not* be released. The owner should be given a retained on wharf certificate and referred to the Liquor and Quota Section. Also note No. 8.
>
> \* \* \* \* \*
>
> "VESSEL DISCHARGING ITS CARGO IN NEW JERSEY
>
> "8. Shipments of alcoholic beverages discharged at piers in the State of New

The evidence shows that during the fiscal year commencing April 1, 1962 and ending March 31, 1963, the gross volume of mail orders handled by plaintiff amounted to $450,000, of which approximately eighty-five per cent represented orders for liquor. The gross volume of business orders for the two previous years was $127,000 for the year ending March 31, 1962 and $225,000 for the year ending March 31, 1961, approximately eighty to eighty-five per cent of such business consisting of liquor orders. Of the liquor orders received by plaintiff approximately sixty per cent were from New York State residents, approximately forty per cent being from residents of other states, including Connecticut, Illinois, Maine, Massachusetts, Michigan, New Jersey and Pennsylvania.[4] The shipments of liquor which arrived in the United States but have been denied release have an approximate value of $90,000 and are impounded at the United States Free Trade Zone on Staten Island, New York.

> Jersey if consigned to a resident of New Jersey may, upon production of proper documentary evidence, be released to the owner if the quantity does not exceed one gallon without securing a release from the New Jersey State Liquor Authority. It will be the responsibility of the inspector to determine its dutiable status. However, if the shipment exceeds one gallon a release from the New Jersey State Liquor Authority must be procured for the *entire quantity*.
>
> "9. Effective March 1, 1963 no Customs Form 3351 shall be issued to passengers who are residents of New York State for alcoholic beverages declared 'to follow'.
>
> \* \* \* \* \*
>
> "The instructions contained in this Surveyor's Order do not apply to alcoholic beverages *ACCOMPANYING* passengers. Therefore, the procedure in this regard as outlined in the 'Digest of Official Publications and Directives Relating to Passengers' Baggage' 6.10(a) (2) remains unchanged, and is quoted below for your convenience \* \* \*."

---

4. District of Columbia residents are also included.

Plaintiff's business operation was conducted in the following manner:

Plaintiff prepared and published order forms which were distributed to departing travelers by certain travel agents, commercial airlines and large corporations located in New York City and other urban parts of the Greater New York City area, and in a number of other states.[5] These order forms were also distributed to travelers in foreign countries by hotels, airline counters, sightseeing companies, guides and other persons who come in contact with American travelers. Occasionally, plaintiff made direct distribution to travelers upon request. Each form contains a code number assigned to the particular travel agent or other distributor, and commissions averaging $2.50 per order form were paid to such distributors. During the fiscal year ending March 31, 1963 plaintiff paid approximately $12,000 in commissions to distributors in the State of New York.

The order form invites United States residents in certain listed states to select five-fifths (one gallon) of liquor per household member traveling together, and to mail the order form for this duty-free liquor from a point outside the United States or its possessions addressed to plaintiff, together with check or money order. The purchase price is stated to include "all shipping charges and insurance," and plaintiff "guarantees prompt delivery" of the liquor to "home or office," with replacement for breakage or loss in transit "at full U. S. retail value."

Plaintiff returned all order forms which were not mailed from outside the United States or its possessions. "Substantially all" of the orders and checks mailed to plaintiff were received at its New York City office, a "very minute" portion being received at plaintiff's office in Antwerp, Belgium. Upon receiving an order form in New York plaintiff deposited the accompanying check in its bank account at the Idlewild branch of a New York bank. At this time plaintiff owned no supplies or stocks of liquor from which the orders might be filled. The orders were then transcribed onto a purchase order form and once each week plaintiff mailed this transcribed order form containing the names, addresses and liquor selections of each of its customers to Société Commerciale Avimar, Antwerp, Belgium, a Belgian company which specializes in the sale of such liquors. At the same time plaintiff sent Avimar its own check, drawn to the order of Avimar, covering the cost of such liquors, at fixed prices which were approximately fifty per cent of the prices paid to plaintiff by its own customers. Upon receipt of these items Avimar withdrew the specific quantities and brands called for by each order from its liquor stocks in Antwerp, and prepared and made up a separate package for each order, a label being physically affixed to the outside of each package bearing the name and address of the purchaser and stating the brands and quantities making up his purchase.

These individual packages, bound by two metal straps, were placed in large sealed containers, bearing the name of the plaintiff, American Travelers Club, Inc. These containers were shipped by steamer from Antwerp to the Port of New York under a bill of lading which identifies a freight forwarder selected by Avimar as consignor and plaintiff or its own Customs House broker in New York as consignee. Avimar paid all freight and shipping charges until delivery in New York. Avimar also paid for insurance of the liquor for the account of "whom it may concern," until delivery in New York, plaintiff paying all transit and insurance costs thereafter. When the liquor arrived in the Port of New York the sealed containers were unloaded and placed in a crib on the pier where they were subsequently broken down to individual packages.

5. Plaintiff did not advertise the availability of its mail order liquor business in newspapers or magazines published or distributed in the United States, other than in "The Clipper," a magazine which was placed in the seat pockets of flights of Pan American Airways.

Upon his arrival in the United States the returning resident completed Customs Form 6063 in which the liquor ordered through plaintiff is declared under the classification of "articles being shipped to you" and stated to be for the personal or household use of the returning resident and not for purposes of sale. Only one declaration was made for each family traveling together. Until March 1, 1963 the tourist also received and completed Customs Form 3351, entitled "Release For Unaccompanied Tourist Shipment." Customs Form 3351 was then forwarded by the tourist to plaintiff, who in turn forwarded it to its own Customs House broker licensed by the United States Customs Bureau, who secured the release of the individually packaged orders.

After such clearance the liquor was picked up at the pier by persons paid by plaintiff on the basis of the quantity handled. These individuals used trucks rented by them and for which no license or permit from the New York State Liquor Authority had been obtained or applied for. The liquor was delivered by them to the addresses furnished by plaintiff's customers in New York City, and to the Railway Express Agency terminal in Long Island City for delivery by that common carrier to addresses outside of New York City. Occasionally, liquor was delivered to plaintiff's premises near Idlewild Airport, where it was stored overnight, or sometimes longer, before final delivery to plaintiff's customers. Plaintiff has no means of determining whether any particular order was mailed by a minor, and liquors have been ordered for members of households including children. Approximately twenty per cent of the liquor orders were mailed from points in Canada for delivery in the United States. The prices paid to plaintiff by New York residents ranged from fifty to seventy per cent below the minimum consumer resale prices which New York's licensed retail dealers charge pursuant to § 101–c of the New York Alcoholic Beverage Control Law, and are substantially lower than the prices fixed for the sale of liquor by the liquor control commissions of the Provinces of Quebec and Ontario, Canada.

There is testimony that five other companies have also engaged in mail order liquor supply operations, and that four of these companies do a substantially greater volume of business than plaintiff. It also appears that the activities of various of these companies have been the subject of suits brought in the New York courts by the Attorney General of the State of New York, and by various of these companies against the State of New York, and that motions in two of these suits are now *sub judice*. Railway Express Agency, Inc., which is also a participant in these suits, has sought to intervene in this proceeding and has been allowed to appear as *amicus curiae*. Counsel for the *amicus* urges this Court to apply the doctrine of "equitable abstention" because the New York courts might decide issues of state law which would be helpful to us in disposing of the case before us. On the other hand, as these suits have been described to us it appears that the factual situations and the precise legal points there involved are significantly different from the facts and issues in the case before us, and the *amicus* alternatively urges the Court to confine its decision to the facts and legal points presented herein. The parties to the action now agree that the doctrine of "equitable abstention" should not be applied and that the Court should proceed to an adjudication on the merits.

## II

### The Jurisdiction Of The Court

As will appear from the relevant portion of the opinion below, we are of the opinion that as applied to its business operation the various constitutional claims of the plaintiff cannot be sustained on the merits. Nevertheless we hold that on the complaint before us plaintiff has raised substantial federal questions under 28 U.S.C. § 1331, and that the United States District Court has jurisdiction of

the action.[6] In so holding we are mindful of the basic rules that in determining federal question jurisdiction we must look to the allegations of the complaint "and not by the way the facts turn out or by a decision of the merits" (Mosher v. City of Phoenix, 1932, 287 U.S. 29, 30, 53 S.Ct. 67, 77 L.Ed. 148); and that a federal claim may be dismissed for want of jurisdiction only if the claim is "obviously without merit," or plainly unsound because previous decisions "foreclose the subject and leave no room for the inference that the question sought to be raised can be the subject of controversy." Ex Parte Poresky, 1933, 290 U.S. 30, 32, 54 S.Ct. 3, 4, 78 L.Ed. 152. See Baker v. Carr, 1962, 369 U.S. 186, 199, 82 S.Ct. 691, 7 L.Ed.2d 663; cf. Wylie v. State Board of Equalization, S.D.Cal., 1937, 21 F.Supp. 604.

■■ Although 28 U.S.C. § 2281 applies only where an injunction is sought against state action on the ground of its "unconstitutionality," the fact that the suit also involves nonconstitutional challenges does not render the statute and the three-judge procedure prescribed by Section 2284 inapplicable. Florida Lime & Avocado Growers, Inc. v. Jacobsen, 1960, 362 U.S. 73, 80, 80 S.Ct. 568, 4 L.Ed.2d 568. Section 2281, therefore, is not inapplicable to the instant case because of the joinder of the state law issues,[7] and we are otherwise satisfied that this three-judge District Court was properly convened under 28 U.S.C. §§ 2281, 2284.

■ As will also appear from the relevant portion of the opinion below, we think it clear that as applied to plaintiff's business operation Bulletin No. 359 does not violate the New York Alcoholic Beverage Control Law. There is therefore no occasion for us to apply the Pullman branch of the doctrine of "equitable abstention" (Railroad Comm. of Texas v. Pullman Co., supra, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971) as there are no uncertain issues of state law in the case. N. A. A. C. P. v. Bennett, 1959, 360 U.S. 471, 79 S.Ct. 1192, 3 L.Ed.2d 1375; City of Chicago v. Atchison, Topeka & Santa Fe Ry. Co., 1958, 357 U.S. 77, 84, 78 S.Ct. 1063, 2 L.Ed.2d 1174; All American Airways, Inc. v. Village of Cedarhurst, 2 Cir., 1953, 201 F.2d 273, 276–277; Note, Judicial Abstention from the Exercise of Federal Jurisdiction, 59 Col.L.Rev. 749, 756–757 (1959).

We reach this same conclusion by applying other factors considered by Judge Hays, writing for a statutory three-judge court, in Idlewild Bon-Voyage Liquor Corp. v. Epstein, S.D.N.Y., 1962, 212 F.Supp. 376. Although the constitutional issues in the case are quite significant, neither party urges the Court to abstain; plaintiff would certainly be subject to additional expense and delay if we did abstain; and the several suits now pending in the state courts differ in substantial respects both as to the facts and the law from the one before us. Cf. Chicago v. Fieldcrest Dairies, Inc., 1942, 316 U.S. 168, 173, 62 S.Ct. 986, 86 L.Ed. 1355; Note, Stay of Federal Proceedings in Deference to Concurrently Pending State Court Suits, 60 Col.L.Rev. 684, 688, 702 (1960).

---

6. The extent of the injury to plaintiff's business satisfies the amount in controversy requirement of 28 U.S.C. § 1331. Lambert v. Yellowley, 2 Cir., 1924, 4 F.2d 915, 918, affirmed, 1926, 272 U.S. 581, 47 S.Ct. 210, 71 L.Ed. 422. The state law issues may be considered under the doctrine of pendent jurisdiction. Siler v. Louisville & Nashville R. Co., 1909, 213 U.S. 175, 29 S.Ct. 451, 53 L.Ed. 753; Hurn v. Oursler, 1933, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148.

7. Because of the existence of other substantial claims which are clearly constitutional in nature, Section 2281 applies here whether plaintiff's Supremacy Clause claim is viewed as raising only "issues of statutory construction even though perhaps eventually leading to a constitutional question," or as presenting a "sole, immediate constitutional question" within the rule of Kesler v. Dep't of Public Safety, 1962, 369 U.S. 153, 155–158, 82 S.Ct. 807, 7 L.Ed.2d 641. See Comment, 15 Stan.L.Rev. 565 (1963).

### III

#### The New York Law

Turning to the merits, we think it clear that the New York Alcoholic Beverage Control Law renders this plaintiff's business operation subject to requirements of regulation and licensing, and prohibits the shipment into the State of New York of liquor where these requirements have not been complied with.

Section 102(1) (c) of the New York statute just referred to declares that:

"No alcoholic beverages shall be shipped into the state unless the same shall be consigned to a person duly licensed hereunder to traffic in alcoholic beverages."

It is clear from the evidence that plaintiff ships alcoholic beverages, or causes them to be shipped, into New York State, and that the liquor is consigned to a person, either plaintiff itself or its Customs House broker, who is not licensed by the New York State Liquor Authority. If the language of § 102(1) (c) is taken at its face value, then, it must be construed as prohibiting plaintiff's arrangement for the shipment of liquor into the State.

Plaintiff's reliance upon People v. Ryan, 1937, 274 N.Y. 149, 8 N.E.2d 313, is entirely misplaced. This case involved an indictment charging the defendant with carrying liquor and wine, which he had purchased in Connecticut, into the State in violation of § 102(1) (d) of the New York Law.[8] It appeared that the beverages were purchased by the defendant solely for his own personal use and were not intended for sale or distribution. Reasoning that "the definite, fixed, and expressed purpose of the Legislature was to regulate and control the *manufacture, sale,* and *distribution* of alcoholic beverages" within the State, and that there was "no prohibition of consumption of alcoholic beverages by private individuals in their own homes" (274 N.Y. at 152–153, 8 N.E.2d at 315; court's own emphasis), the court held that the expression "No common carrier or other person" in § 102(1) (d) should be read under the maxim *ejusdem generis,* that is, to embrace only persons engaged in commercial transportation. Section 102(1) (c), however, does not contain similar language which could be given this statutory construction, and, in any event, if the holding in Ryan can be extended to cover § 102(1) (c) as well plaintiff is not in any way assisted since plaintiff is engaged in commercial transportation.

In reaching its conclusion the court in Ryan also stated that it did not wish to deny to the defendant the right secured to him by § 116(b) of the New York Law[9] to "transport within the State liquor owned by him as long as the purpose of transportation is not for distribution or sale." 274 N.Y. at 153, 8 N.E.2d at 315. But plaintiff's contention that

---

8. "No common carrier or other person shall bring or carry into the state any alcoholic beverages, unless the same shall be consigned to a person duly licensed hereunder to traffic in alcoholic beverages."

9. Section 116 of the New York Alcoholic Beverage Control Law reads in full as follows:

"No alcoholic beverage shall be transported within this state by any vehicle unless such vehicle is owned and operated, or hired and operated by a licensee and unless there shall be attached to or inscribed upon both sides of such vehicle so as to be visible from a reasonable distance, a sign setting forth the name and address of such licensee in such form and with such additional information as the liquor authority may prescribe; provided, however, (a) that alcoholic beverages may be transported by a retail licensee to the home of a purchaser not to be resold by the purchaser; (b) that alcoholic beverages owned by a person may be transported from place to place not for purposes of sale; (c) that alcoholic beverages may be delivered from a licensee to a steamship or railroad station or terminal for purposes of transportation, and may be delivered from a steamship or railroad station or terminal to a purchaser for purposes of consumption, or to a licensee by any bona fide trucking agency holding a permit under this chapter."

it also falls under the shield of § 116(b) cannot be sustained. Even if we agreed that the Section is not limited to transportation by the owner himself, on the evidence before us we cannot accept plaintiff's attorney's characterization of his client as an "agent" for those who submitted orders to it. The evidence clearly sustains the conclusion that plaintiff maintains an independent business whereby it purchases liquor from a third party, taking title in its own name, and that it contracts to sell such liquor to its customers at a fixed price. The fact that plaintiff additionally imports and delivers the liquor to its customers does not establish that it is acting primarily for their benefit and not for itself. See Restatement (Second), Agency § 14 K (1958). Moreover, there is serious question whether the liquor is "owned" by plaintiff's customers prior to the fulfillment by plaintiff of its contractual duty to deliver to the customer's home or business address. N.Y. Personal Property Law § 100, Rule 5.[10]

Plaintiff also mistakenly relies upon Matter of Wylegala v. Railway Express Agency, Inc., 177 Misc. 1071, 32 N.Y.S.2d 814 (Sup.Ct.1942), affirmed, 264 App.Div. 937, 36 N.Y.S.2d 440 (4th Dep't 1942). Wylegala merely held that §§ 102(1) (e), (d) and (e) do not apply to mail order purchases of liquor by New York consumers from New York retail dealers and the subsequent intrastate delivery of such purchased liquor. The court in Wylegala

also noted the applicability of § 116(c) to the shipments from the licensed retail dealers to the defendant common carrier and then to the consumer-purchasers. The Wylegala decision, however, is clearly inapplicable to the instant case, for here the shipments are not intrastate and there is no licensee under § 116(c).[11]

The conclusion which emerges most clearly from a study of the evidence taken before us is that plaintiff is engaged in the liquor business in New York; and this does not depend solely upon § 102 (1) (c).

Section 100(1) provides that:

> "No person shall manufacture for sale or sell at wholesale or retail any alcoholic beverage within the state without obtaining the appropriate license therefor required by this chapter."

The evidence establishes that it is part of plaintiff's regular business operation to solicit and receive orders for, and to effect the delivery of liquor within New York State, and that it also occasionally stores liquor on its premises within the State. Under the broad definition of "sale" in § 3(28) of the New York statute [12] we find that plaintiff has violated § 100(1).

Defendants also contend that plaintiff's unlicensed trucking activities violate § 94(1); that its unlicensed storing violates § 96(1); and that its unlicensed soliciting violates § 102(1) (b). Section 65(1), relating to sales to minors,

10. Plaintiff contends that the assembling, packaging and labeling of the individual order by the Belgian supplier constitutes an appropriation to the contract within the meaning of Rule 4(1) of N.Y. Personal Property Law § 100. Difficulties remain, however, as to the element of the assent of the buyer required by this Rule (see Vold, The Law of Sales, §§ 31, 32 (2d ed. 1959)), and it would seem that the clear inference from Rule 5 should be given effect. Sidford & Greene, Inc. v. Wehmeyer Coal Co., 133 Misc. 22, 230 N.Y.S. 611 (Sup.Ct.1926), affirmed, 221 App.Div. 778, 223 N.Y.S. 916 (2d Dep't 1927), affirmed, 1928, 248 N.Y. 539, 162 N.E. 516.

11. Section 116(a) is inapplicable for a similar reason.

12. " 'Sale' means any transfer, exchange or barter in any manner or by any means whatsoever for a consideration, and includes and means all sales made by any person, whether principal, proprietor, agent, servant or employee of any alcoholic beverage and/or a warehouse receipt pertaining thereto. 'To sell' includes to solicit or receive an order for, to keep or expose for sale, and to keep with intent to sell and shall include the delivery of any alcoholic beverage in the state."

and § 101–c, relating to minimum consumer resale prices, have also been called to our attention. No useful purpose would be served by a detailed discussion of these additional alleged violations. When we consider the purpose and policy of the New York Alcoholic Beverage Control Law, as set forth in § 2 thereof,[13] as well as the statutory provisions already referred to, it is abundantly clear to us that the very heart of plaintiff's liquor operation falls within the coverage of the New York statute and that it is subject to requirements of regulation and licensing.

■ This conclusion is not altered by the Liquor Authority's issuance in 1954 of Bulletin No. 263, which the present Bulletin No. 359 superseded. Plaintiff acquired no vested rights and the plain import of the statute could not be changed by this administrative ruling, which defendants now characterize as "administrative indulgence." See McGoldrick v. Family Finance Corp., 1942, 287 N.Y. 535, 539, 41 N.E.2d 86, 88, 141 A.L.R. 909; Matter of Restaurants & Patisseries Longchamps, Inc. v. O'Connell, 271 App.Div. 641, 644, 67 N.Y.S.2d 362, 365 (1st Dep't 1947), appeal dismissed, 1947, 296 N.Y. 239, 72 N.E.2d 174; F. C. C. v. WOKO, Inc., 1946, 329 U.S. 223, 227–228, 67 S.Ct. 213, 91 L.Ed. 204.

At this point we may conveniently also dispose of an additional claim presented by plaintiff's briefs, namely, that the New York Alcoholic Beverage Control Law, and Bulletin No. 359 which purports to be based upon it, are so vague and indefinite as to be in violation of the Due Process Clause of the Fourteenth Amendment. Assuming that plaintiff may anticipate criminal proceedings not yet brought against it, or that plaintiff otherwise has standing to raise the point, the answer to this claim is that it is perfectly clear that plaintiff's business is subject to regulation and licensing under the state law. Whatever doubts may or may not exist as to the application of the New York statute to other persons and other situations need not be considered in the instant case. Jordan v. De George, 1951, 341 U.S. 223, 231–232, 71 S.Ct. 703, 95 L.Ed. 886; United States v. Wurzbach, 1930, 280 U.S. 396, 399, 50 S.Ct. 167, 74 L.Ed. 508; Note, The Void-For-Vagueness Doctrine in the Supreme Court, 109 U.Pa.L.Rev. 67, 101 (1960).

## IV

### The Federal Law

■ Plaintiff's primary federal claim is that Bulletin No. 359 and the New York Alcoholic Beverage Control Law, if the administrative ruling is found to be authorized by the statute, are inconsistent with federal rights granted under a federal statute, 19 U.S.C. § 1201, par. 1798, and that the State action must be declared null and void under the Supremacy Clause, U.S.Const. Art. VI, Cl. 2. We reject this claim as we interpret the federal statute merely to grant an exemp-

---

13. "§ 2. Policy of state and purpose of chapter

"It is hereby declared as the policy of the state that it is necessary to regulate and control the manufacture, sale and distribution within the state of alcoholic beverages for the purpose of fostering and promoting temperance in their consumption and respect for and obedience to law. It is hereby declared that such policy will best be carried out by empowering the liquor authority of the state to determine whether public convenience and advantage will be promoted by the issuance of licenses to traffic in alcoholic beverages, the increase or decrease in the number thereof and the location of premises licensed thereby, subject only to the right of judicial review hereinafter provided for. It is the purpose of this chapter to carry out that policy in the public interest. The restrictions, regulations and provisions contained in this chapter are enacted by the legislature for the protection, health, welfare and safety of the people of the state. It shall be against the public policy of the state to permit the selling or serving of alcoholic beverages for consumption in such premises as were commonly known and referred to as saloons, prior to the adoption of the eighteenth article of amendment to the constitution of the United States of America."

tion from the levy of customs duties and not to confer an affirmative federal right upon a commercial enterprise to import liquor into a state notwithstanding the state's prohibitions against such transportation.

19 U.S.C. § 1201, par. 1798, in relevant part, provides as follows:

"§ 1201. Free list

"Except as otherwise specially provided in this chapter, the articles mentioned in the following paragraphs, when imported into the United States * * * shall be exempt from duty.

\* \* \* \* \* \*

"Par. 1798

\* \* \* \* \* \*

"(c) In the case of any person arriving in the United States who is a returning resident thereof—

\* \* \* \* \* \*

"(2) articles (including not more than one wine gallon of alcoholic beverages * * *) acquired abroad as an incident of the journey from which he is returning, for his personal or household use, but not imported for the account of any other person nor intended for sale, if declared in accordance with regulations of the Secretary of the Treasury, up to but not exceeding in agggregate value—[$100, $200 or $300, as specified in (A) and (B) ]."

We may note at the outset that this customs statute is significantly devoid of any language purporting to create an affirmative federal "right" to import into a state a quantity of liquor in violation of a state's liquor laws. On its face the statute does no more than exempt for tourists a certain quantity from the payment of the customs duty. The statutory language, "when imported," naturally read may be elaborated to mean "when lawfully imported in accordance with applicable state laws."

Certainly we have not been cited to, nor have we ourselves found anything in the legislative history of the statute to suggest the contrary. For all that appears the Congress has merely sought to grant an exemption from the levy of customs duties as an act of legislative grace and perhaps also to develop foreign travel and related interests. See U.S.Code Cong. & Adm.News (1961), pp. 2333–2335; H.R.Rep. No. 1870, 74th Cong., 1st Sess., pp. 10–11 (1935); S.Rep. No. 2028, 74th Cong., 2d Sess., p. 15 (1936); Hearings on H.R. 9185 Before a Subcommittee of the Senate Finance Committee, 74th Cong., 2d Sess., pp. 33, 147–148 (1936).

Plaintiff's interpretation of the statute is all the more difficult to accept in view of the broad regulatory powers which have been accorded to the states with respect to the importation of liquor into a state for delivery or use therein. U.S. Const. Amend. XXI; "Wilson Act," 27 U.S.C. § 121; "Webb-Kenyon Act," 27 U.S.C. § 122; "Federal Alcoholic Administration Act," 27 U.S.C. § 204(a) (2) (C). If the Congress had intended to circumscribe such powers by creating an affirmative federal right to import liquor into a state without regard to the state's prohibitions against such transportation, we may assume that it would have employed language more apt for that purpose than is found in the customs statute relied upon by plaintiff. Cf. Ziffrin, Inc. v. Reeves, 1939, 308 U.S. 132, 140–141, 60 S.Ct. 163, 84 L.Ed. 128.

This analysis is confirmed by the only judicial interpretation of the statute that has been brought to our attention. Wylie v. State Board of Equalization, supra, 21 F.Supp. at 605. This is also the practical construction adopted by the Commissioner of Customs, U.S. Treasury Department, in the booklet, "United States Customs Hints For Returning Residents of the United States," page 3 (September 1961):

"Customs officers will not release liquors destined to any State for use in violation of its laws. Check your State laws!"

Moreover, even if we agreed that the customs statute does grant to a returning resident an affirmative federal right to import liquor without regard to state laws, in view of the statute's proviso that the liquor must not be "imported for the account of any other person nor intended for sale," we cannot say that the statute accords such a right to plaintiff, whose commercial enterprise is engaged in the business of importing liquor for resale or for the account of others.

In thus construing the federal statute we also avoid the necessity of passing upon the grave constitutional issue of whether the broad sweep of the Twenty-first Amendment renders the state law superior to a conflicting federal statute.[14] See Rosenberg v. Fleuti, 374 U.S. 449, 451, 83 S.Ct. 1804, 10 L.Ed.2d 1000. In addition, as we hold that the customs statute does not confer upon plaintiff an affirmative federal right to import liquor, it is not necessary for us to consider whether such right would be protected by the Privileges and Immunities Clause of the Fourteenth Amendment.[15]

Plaintiff's other claims of constitutional infringement are to the effect that the Commerce, Due Process and Equal Protection Clauses of the Constitution have been violated because of the disruption of plaintiff's business and the intrusion into its affairs. Plaintiff's main reliance here is upon the decision in Idlewild Bon-Voyage Liquor Corp. v. Epstein, supra, 212 F.Supp. 376, where Judge Hays, writing for the statutory three-judge court, held invalid an attempted state prohibition of a commercial enterprise whereby liquor was purchased and paid for by departing travelers in New York City, but there was no delivery or use until arrival at the foreign destination. The Twenty-first Amendment [16] was found inapplicable because there was no "delivery or use" within New York, and close Customs inspection reduced to "minimal" proportions the possibility of diversion within the State. The State action was struck down as a violation of the Commerce Clause because New York had not sought to "regulate or supervise," but to "terminate," and this attempted prohibition was not found to be "reasonably necessary to protect the local public interest in preventing unlawful distribution or use of liquor within the state." 212 F.Supp. at 382–383, 386.

The instant case, however, is different in two critical respects. New York's action is directed at the importation of liquor for delivery and use within the State, so there is here no question but that the Twenty-first Amendment is applicable.[17] And New York has merely sought to impose conditions of regula-

14. See United States v. Frankfort Distilleries, Inc., 1945, 324 U.S. 293, 299, 65 S.Ct. 661, 89 L.Ed. 951 (purporting not to decide the issue; see also concurring opinion of Justice Frankfurter, stressing broad state power); Nippert v. City of Richmond, 1946, 327 U.S. 416, 425, fn. 15, 66 S.Ct. 586, 90 L.Ed. 760 (stressing broad state power, but using ambiguous language on federal-state conflict); Carter v. Virginia, 1944, 321 U.S. 131, 135, 138, 64 S.Ct. 464, 467, 88 L.Ed. 605 ("in the absence of contrary federal legislation" language; but both majority and Justice Black in concurring use Commerce Clause and not Twenty-first Amendment analysis); Duckworth v. Arkansas, 1941, 314 U.S. 390, 394, 62 S.Ct. 311, 313, 86 L.Ed. 294 ("in the ab-

sence of supervening Congressional action" language; but Commerce Clause and not Twenty-first Amendment analysis is used).

15. See Giozza v. Tiernan, 1893, 148 U.S. 657, 661–662, 13 S.Ct. 721, 37 L.Ed. 599; Wylie v. State Board of Equalization, supra, 21 F.Supp. at 606.

16. "Sec. 2. The transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited."

17. Decisions limiting state regulation of liquor to be delivered or used in a fed-

tion and licensing upon a commercial enterprise which imports liquor for delivery and use to New York residents within the State. Whether one takes the position that the Twenty-first Amendment frees the states entirely from the ambit of the Commerce, Due Process and Equal Protection Clauses,[18] or whether one takes the view that reasonable regulations of liquor traffic by a state constitute a proper exercise of the police power,[19] it is abundantly clear that New York has not violated any of the constitutional provisions relied upon by plaintiff.[20]

The injunction is denied, the complaint is dismissed on the merits and judgment is granted for defendants.

eral enclave within a state (Johnson v. Yellow Cab Transit Co., 1944, 321 U.S. 383, 386–387, 64 S.Ct. 622, 88 L.Ed. 814; Collins v. Yosemite Park & Curry Co., 1938, 304 U.S. 518, 536–538, 58 S.Ct. 1009, 82 L.Ed. 1502) are not in point here for a similar reason.

Nor is there any merit in plaintiff's contention that only "dry" states are given regulatory power under the Twenty-first Amendment. The cases are numerous in which the Supreme Court has held the Amendment applicable to "wet" and "semi-wet" states. See Gordon v. Texas, 1958, 355 U.S. 369, 78 S.Ct. 363, 2 L.Ed.2d 352, affirming, 166 Tex.Cr.R. 24, 310 S.W.2d 328; Ziffrin, Inc. v. Reeves, supra 308 U.S. 132, 60 S.Ct. 163, 84 L.Ed. 128; Indianapolis Brewing Co. v. Liquor Control Comm., 1939, 305 U.S. 391, 59 S.Ct. 254, 83 L.Ed. 243; Joseph S. Finch & Co. v. McKittrick, 1939, 305 U.S. 395, 59 S.Ct. 256, 83 L.Ed. 246; Mahoney v. Joseph Triner Corp., 1938, 304 U.S. 401, 58 S.Ct. 952, 82 L.Ed. 1424; State Board of Equalization v. Young's Market Co., 1936, 299 U.S. 59, 57 S.Ct. 77, 81 L.Ed. 38; see also Idlewild Bon-Voyage Liquor Corp. v. Epstein, supra, 212 F.Supp. 376 (assuming Twenty-first Amendment is otherwise applicable to New York State).

18. See Ziffrin, Inc. v. Reeves, supra, 308 U.S. at 138, 60 S.Ct. at 166, 84 L.Ed. 128; Mahoney v. Joseph Triner Corp.,

supra, 304 U.S. at 404, 58 S.Ct. at 953, 82 L.Ed. 1424; Joseph S. Finch & Co. v. McKittrick, supra, 305 U.S. at 397–398, 59 S.Ct. at 257, 83 L.Ed. 246; Indianapolis Brewing Co. v. Liquor Control Comm., supra, 305 U.S. at 394, 59 S.Ct. at 255, 83 L.Ed. 243 (this case, along with Triner and Finch, was cited by the Supreme Court in California v. Washington, 1958, 358 U.S. 64, 79 S.Ct. 116, 3 L.Ed.2d 106). Cf. State Board of Equalization v. Young's Market Co., supra, 299 U.S. at 64, 57 S.Ct. at 79, 81 L.Ed. 38 (also cited in California v. Washington, supra).

19. See Duckworth v. Arkansas, supra, 314 U.S. 390, 62 S.Ct. 311, 86 L.Ed. 294 (concurring opinion of Justice Jackson objects to Commerce Clause analysis); Carter v. Virginia, supra, 321 U.S. 131, 64 S.Ct. 464, 88 L.Ed. 605 (concurring opinion of Justice Frankfurter rejects this technique, citing Triner; cited in Gordon v. Texas, supra, 355 U.S. 369, 78 S.Ct. 363, 2 L.Ed.2d 352).

20. Plaintiff also relies upon decisions holding that state law has not entirely preempted the liquor field from non-conflicting federal legislation (see cases cited in Idlewild Bon-Voyage Liquor Corp. v. Epstein, supra, 212 F.Supp. at 385, fn. 16), but we find these authorities to have no relevance to the case before us.